CONNOR W. OLSON (SB #291493)
Law Offices of Connor W. Olson
520 Capitol Mall, Suite 150
Sacramento, CA 95814
office@cwo-law.com
Telephone: (916) 905-7276

**Attorneys for Plaintiff and Putative Class**
*Additional Attorneys Listed on Signature Page*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOE PERALTA, on behalf of himself and all others similarly situated,<br><br>        Plaintiffs,<br><br>v.<br><br><br>FCA US LLC, a Delaware limited liability company and DOES 1 through 100, inclusive,<br><br>        Defendants. | Case No.: 5:20-cv-2307<br><br>Date: N/A<br>Time: N/A<br>Dept: N/A<br><br>**CLASS ACTION COMPLAINT**<br><br>1. **False Advertising in Violation of California Business & Professions Code §§ 17500,** *et seq.*<br>2. **Violation of Express Warranty Under Song-Beverly Consumer Warranty Act §§ 1790,** *et seq.*<br>3. **Violation of Implied Warranty Under Song-Beverly Consumer Warranty Act §§ 1790,** *et seq.*<br>4. **Violation of Manufacturer's Duties Under the Song-Beverly Consumer Warranty Act §§ 1790,** *et seq.*<br>5. **Violation of Consumer Legal Remedies Act §§ 1750,** *et seq.*<br>6. **Unfair Business Practices in Violation of California Business & Professions Code §§ 17200,** *et seq.*<br>7. **Breach of Express Warranty**<br>8. **Fraudulent Concealment**<br>9. **Negligent Misrepresentation**<br>10. **Unjust Enrichment**<br><br>**DEMAND FOR JURY TRIAL** |

Joe Peralta ("Plaintiff") bring this class action on behalf of himself and all others similarly situated in California who purchased the limited edition 2018 Dodge Challenger SRT Demon ("Class Vehicle" or "Dodge Demon") from Defendant FCA USA LLC and DOES 1 through 100, inclusive ("Defendants") in California.

## NATURE OF THE ACTION

1.      Plaintiff Joe Peralta brings this Class Action against Defendants, on behalf of himself, by and through his attorneys, and all other owners of the Dodge Demon to obtain relief for certain misrepresentations, a complete failure to warrant, and a concealed defect in the "one-of-a-kind" 45-square-inch "functional" Air-Grabber™ hood scoop, which causes it to warp and damage the Class Vehicle ("Hood Scoop Defect").

2.      In "laymen's terms," the Hood Scoop Defect is a self-perpetuating issue that manifests itself based on the very use of the Class Vehicle, which results in a sagging, buckling, bulging, and vibrating hood scoop insert.  This in turn warps the insert and strips, cracks, and chips the original, factory paint, causing further damage and rust to the hood.

3.      Despite occurring well within warranty, Defendants have failed to offer a timely or adequate fix to conform the Class Vehicle to Defendants' express representations.  More troubling, Defendants concealed their knowledge of the Hood Scoop Defect while continuing to market and sell the Class Vehicle as one with a particularly high grade and quality that it simply does not possess.

4.      To date, the Hood Scoop Defect remains unmitigated, continues to cause damage, and serves to substantially impact the Class Vehicle's value and usability, entitling Dodge Demon owners to both legal and equitable relief.

5.      The "Class Period" is designated as of the time from March 1, 2018 through the date of the trial and is based upon allegations that Defendants misrepresented and concealed material facts, failed to honor express and implied warranties, and, by offering shoddy fixes, have caused further damage to the Class Vehicle.  The allegations are based upon personal knowledge and belief as to their own acts, and upon information and belief (based on investigation by Plaintiff, the Putative Class, and Counsel) as to all other matters and allegations,

-1-

Plaintiff believes substantial evidentiary support exists after a reasonable opportunity for further investigation and discovery of evidence, as follows.

## JURISDICTION AND VENUE

6.      This Court has original jurisdiction over this Class Action pursuant to U.S.C. § 1332 and the Class Action Fairness Act ("CAFA").  Plaintiff and many other members of the Putative Class are residents and citizens of a state different from the home state of Defendant FCA USA LLC.  More specifically, Plaintiff and many the Class members are California residents whereas Defendant FCA USA LLC is a resident of Delaware.  Plaintiff is informed and believes, and based on, thereon alleges, that the amount in controversy exceeds $5,000.000.00

7.      Venue is proper pursuant to U.S.C. § 1391 in that Plaintiff Joe Peralta resides in this judicial district, purchased his vehicle in this district, and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district.  In addition, Defendant FCA USA LLC does substantial business in this judicial district, has received substantial benefit from doing business in this judicial district, and has knowingly engaged in activities directed at consumers in this judicial district.  Furthermore, a significant number of Defendant's customers are California residents, and the wrongful acts alleged herein have affected members of the Putative Class throughout California.  California has a significant aggregation of contacts to the claims at issue herein in that Defendants' promote, market, and sell vehicles at issue in California.  Defendants are also subject to personal jurisdiction in the State of California and in this judicial district.

## PARTIES

8.      Plaintiff Joe Peralta is at all times alleged herein a citizen of the State of California.  Mr. Peralta purchased the Dodge Demon in 2018 in Ontario, California where he currently resides.

9.      Defendant FCA US LLC is a Delaware limited liability company with its headquarters in Auburn Hills, Michigan.  FCA US LLC, has twelve Northern American Regional Business Centers and Parts Distributions Centers that are responsible for all sales,

-2-

service, parts, service contracts and dealer initiatives, one of which is located in Los Angeles.[1] Defendants entered into a contract with Representative Plaintiff in the County of San Bernardino for the sale of the Dodge Demon.

10. Those Defendants identified as DOES 1 through 100, inclusive, were, at all times herein-mentioned, business affiliates, successors, officers, directors, partners, and/or managing agents of the Defendants. Plaintiff is informed and believes, and on that basis, alleges that, at all times herein-mentioned, each of the Defendants identified as DOES 1 through 100, inclusive, conduct violates various California consumer statutes, warranty statues, and common law.

11. Plaintiff Peralta is unaware of the true names and capacities of those Defendants sued herein as DOES 1 through 100, inclusive, and therefore sues Defendants by fictitious names. Plaintiff will seek leave of court to amend this Complaint when such names are ascertained. Plaintiff is informed and believes, and, on that basis, alleges that each of the fictitiously-named Defendants is/was responsible in some manner for, gave consent to, ratified, and/or authorized the conduct herein alleged and that the Plaintiff and Class' damages were proximately caused thereby.

12. Plaintiff Peralta is informed and believes and, on that basis, alleges that, at all times herein-mentioned, each of the Defendants was the agent and/or the employee of the remaining Defendants and, in doing the acts herein alleged, was acting within the scope of such agency and/or employment.

**FACTUAL BACKGROUND**

13. FCA US LLC, is a North American automaker and arguably one of the largest in the world.

14. Starting in 2017, Defendants designed, manufactured, marketed, distributed, sold, and shipped a total of 3,300 2018 Dodge Challenger SRT Demons to dealerships throughout the United States and Canada. Although similar in appearance to other Dodge

---

[1] See https://media.fcanorthamerica.com/newsrelease.do?id=866

1   Challenger models, the Class Vehicle was markedly different in terms of price and features, as

2   well as advertised capabilities and future collectability.  According to Tim Kuniskis, Head of

3   Passenger Cars for Dodge SRTs: "[t]he people who bought a Challenger SRT Demon are

4   enthusiasts to the core. . . ."[2]

5          15.    Before the Class Vehicle was offered for sale, it was advertised online as "the

6   most-powerful muscle car ever with <u>840 horsepower</u> and 770 pounds-feet of torque from its

7   supercharged 6.2-liter HEMI® Demon V-8 engine." (Emphasis added.)



Figure 1: Video Description From Presale Advertisements
https://www.youtube.com/watch?v=3vD6A6NxySQ

16         16.    The Class Vehicle's engine is cooled in part by a specially designed and

17   trademarked 45-square-inch "functional Air-Grabber™ hood scoop,"[3] which, Defendants'

18   development engineers "agreed . . . had to make a statement and still be very functional.  It

19   had to be bold and aggressive. . . ."[4]  According to Defendants, this intake chiller system

20   actively sucks heat out of the engine and supercharger coolant, lowering the intake charge

21   system by 45 degrees Fahrenheit, which allows the engine to keep making power regardless

22   of the weather.  In fact, Defendants teased that it sucks air like a jet intake.[5]

23         17.    As shown on the following page, both the Air-Grabber™ hood scoop and the

24   Class Vehicle's advertised horsepower are featured prominently in Defendants' marketing

25   materials.

26   ―――――――――――――――――
    [2] See https://media.fcanorthamerica.com/newsrelease.do?id=18679&mid=
27   [3] See https://blog.fcanorthamerica.com/2017/06/08/creating-the-dodge-challenger-srt-demon-v-8/
    [4] See https://blog.dodge.com/features/re-imagining-the-air-grabber-hood-scoop/index.html
28   [5] See https://www.topgear.com/car-news/big-reads/it-mad-bad-840bhp-dodge-demon and
    https://www.hellcat.org/threads/demon-on-jay-leno%E2%80%99s-garage.162641/

Figure 2: Figure 2: Dodge Challenger SRT Demon.  Image available at
https://www.dodge.ca/en_dir/pdf/2018/brochures/challenger.pdf

18.     Defendants' blog confirms the obvious: the "Demon's most striking visual cues
is its massive hood scoop – the largest functional hood scoop opening offered on any production
car.  Positioned optimally near the leading edge of the hood. . . ."[6]  Playing on this, Defendants'
"unique, three month-teaser campaign" spent considerable time promoting the one-of-a-kind
hood scoop through, among other things, specific, highly-produced online advertising.[7]

19.     The sale of the Class Vehicle began in early 2018 and was accompanied by
numerous warranties.  Although the Class Vehicle came with an MSRP of approximately
$85,000, due to the fanfare created by the intense blitzkrieg-styled marketing campaign,
including paid-for celebrity praise *a la* a feature spot on "Jay Leno' Garage,"[8] consumers across

---

[6] https://blog.dodge.com/features/re-imagining-the-air-grabber-hood-scoop/index.html
[7] https://www.youtube.com/watch?v=c_zw62uIa4k
[8] See https://www.topgear.com/car-news/big-reads/it-mad-bad-840bhp-dodge-demon and
https://www.hellcat.org/threads/demon-on-jay-leno%E2%80%99s-garage.162641/

the country deposited thousands of dollars to get a place in line, with many, including Plaintiff, spending well over $150,000 to ultimately purchase the "one-of-a-kind" vehicle.[9]

20.    Defendants advertised that in "the quest for absolute drag strip domination, ***engineers reviewed every part and piece*** of the 2018 Dodge Challenger SRT Demon to ensure it provides the ultimate in performance."[10]  (Emphasis added.)  FCA US LLC further advertised that the Dodge Demon was accessorized "to build on the exclusivity and future collectability of the most powerful muscle car"[11] in history.   However, the Hood Scoop Defect renders those claims false because Dodge Demon owners are required aesthetics and performance, which substantially impairs the Class Vehicles use and value, when they were led to believe that they could have both.

21.    Shortly after the Class Vehicle was sold to the public, owners began noticing and, as early as March 19, 2018,[12] complaining that the highly touted 45-square-inch wide Air-Grabber™ hood scoop was sagging, buckling, and bulging, which in turn was stripping cracking, and chipping the paint, causing further damage to each Class Vehicle's hood.  A cursory glance of various car blogs provides an illustration.[13]

#31 · Jun 22, 2018

My car just showed up with 4 miles and the paint was already scraping off. I took the scoop off, sanded and prep it with some ARP satin black touch up paint. I have a black hood so you cant tell its missing the scoop from a distance. Im going to keep it off till theres a resolution if any.

#38 · Jul 30, 2018

Add mine to the list of chipped hoods from the hood scoop. Car has about 1500 miles on it.

Any word yet on what dodge is planning on doing?

---

[9] See https://media.fcanorthamerica.com/newsrelease.do?id=18304&mid=200 (building on its exclusivity and future collectability, Defendants named Hagerty Insurance, the largest provider of specialty insurance for collectible vehicles, as the official insurance provider of the Class Vehicle.)
[10] See *Ibid*.
[11] See https://media.fcanorthamerica.com/newsrelease.do?id=18679&mid=
[12] See https://www.hellcat.org/threads/help-paint-chipping-on-hood-with-500-miles.176577/
[13] See https://www.hellcat.org/threads/demon-hood-scoop-problem.210737/

#5 • Jun 11, 2018

Yup, as mentioned in another thread related to this very same topic, I believe the root cause is
thermal expansion (i.e., different rates of thermal expansion between the hood and plastic scoop
materials). I have the gphx. pkg. and thanks to this thread, have monitored my hood from day one.
At 29 miles I returned to the dealer to notify my service advisor of a small chip forming in the paint at
the scoop/hood interface - same place as everyone else. He agreed to note this concern & mileage
in my account for future reference as I plan to monitor the failure meanwhile hoping FCA announces
a viable solution. I also agree on the poor paint prep, which only serves to facilitate the rapid paint
failure after only a few heat cycles. Now at 129 miles the paint damage on my hood hasn't gotten
much worse than at 29 miles and I attribute this to opening the hood as soon as I return home from
driving the car to let the engine compartment & hood "breath" so as to limit the time these parts
heat soak. I did this with my HC's as well but to relieve the plastic bits & pieces form heat soaking. I
had black painted satin hoods on two of my HC's and never experienced paint failure around the
scoop inserts. In addition to the larger surface area of the Demon scoop v. HC, I'll bet the scoop
material is made from a different polymer...? So like I said, hopefully FCA devises a solution that
ideally, would include a revised scoop (plug-n-play) that has a lower coefficient of TE and perhaps
provisions for allowing a limited amount of expansion/vibration via some contoured elastomeric
interface...

22.     Unfortunately, and despite initially rolling out the red carpet to potential
customers with exclusive gifts paid for by celebrity praise [14] and a one-thousand-horsepower-
fueled marketing campaign, Defendants slammed on the brakes at the first sign of chipped paint
and have completely breached their obligations by failing to conform the vehicles to their
express warranties.  As a result, the value and usefulness of the Class Vehicle remains
substantially impacted.

23.     Making matters worse, Defendants knew or should have known about the Hood
Scoop Defect had they adequately "reviewed every part of the piece" of the vehicle as was
advertised. [15]  At the very least, Defendants knew once owners began complaining in March of
2018.

24.     Despite having early knowledge of the Hood Scoop Defect, Defendants waited
nearly two years before developing a so-called fix, (Service Bulletin 23-033-19).  But the so-
called fix calls for a different, non-original hood scoop bezel – the only part of the Demon Air-

---

[14] All customers who purchased the new 2018 Dodge Challenger SRT Demon received a one full-day session at
Bob Bondurant School of High-performance Driving.
[15] https://media.fcanorthamerica.com/newsrelease.do?id=18679&mid= ("engineers reviewed every part and
piece of the 2018 Dodge Challenger SRT Demon to ensure it provides the ultimate in performance.")

Grabber™ that is visible from the outside, which actually causes further damage to the Class Vehicle.

25.    In sum, the repair(s) offered to the class of Dodge Demon owners are inadequate and represent an insurmountable departure from the vehicle as advertised, and in and of itself causes irreversible damage to the vehicle's value, use, and future collectability.

## FACTS SPECIFIC TO PLAINTIFF PERALTA

26.    Plaintiff Peralta purchased the Dodge Demon in August 2018 in Ontario, California for $166,618.07. Prior to purchasing the Dodge Demon, Mr. Peralta viewed countless advertisements.  This included pictures, videos, and written representations specifically highlighting the Dodge Demon's hood scoop and alleged 840 horsepower, celebrity promotions and praise, and assertions regarding the Dodge Demon's workmanship, value and future collectability.

27.    At the time Mr. Peralta purchased the Dodge Demon, he believed that the vehicle had 840 horsepower.  Mr. Peralta did not learn that the Dodge Demon only had 808 horsepower until he received Defendants' "Dodge Demon Crate."  As Mr. Peralta discovered, the Dodge Demon Crate contained some of the components necessary to achieve the advertised horsepower, which Mr. Peralta was forced to install at his own expense, approximately $250.00. Mr. Peralta also learned, for the first time, that the Dodge Demon's advertised 840 horsepower was only achievable upon using racing fuel.

28.    Notwithstanding his initial excitement, in late 2018, after just 20 miles of use, Mr. Peralta began noticing the Hood Scoop Defect.  At the time, Mr. Peralta contacted Dodge of Ontario California to report the defect and determine if there was a repair.

29.    Approximately one year later, in September 2019, Mr. Peralta was advised that Defendants had a fix for the Hood Scoop Defect, which he had performed at an authorized repair facility.

30.    Unfortunately, however, getting the so-called fix turned out to be worse than not doing anything at all.  For starters, his once matte-finished Dodge Demon now has an entirely different finish.  In addition to the non-matching finish, Mr. Peralta's Dodge Demon now has a

-8-

different hood scoop insert.   Unbelievably, and upon closer inspection of the Dodge Demon, it is evident that numerous holes were drilled into the hood of the vehicle to replace the original inserts.

31.    Adding insult to injury, just one week after the "fix," the hood scoop insert began "bowing down" again.  To try and combat further deterioration, Mr. Peralta drives his vehicle less; and even when he drives the vehicle, he is forced to manually press the hood scoop insert back into place after every use.  In spite of his efforts, the new hood scoop insert is once again causing damage to his vehicle's hood.  Thus, not only is Mr. Peralta's Dodge Demon's hood and hood scoop materially different, but it still suffers from the same defect!

32.    Inconceivably, Defendants have only ever offered Plaintiff the exact same inadequate fix.  Based on his prior experience, however, Mr. Peralta rightfully fears that this so-called fix will not only fail, but will also cause further damage to his Dodge Demon, which is already no longer considered "original" or "to factory specification."

## CLASS ACTION ALLEGATIONS

33.    Plaintiff brings this Class Action both individually and as a Class Action pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), 23(b)(3), against Defendants on his behalf and on behalf of the following proposed Class ("the Class") as defined below.

34.    Plaintiff brings this Class Action on behalf of the themselves and the following proposed Class.

> **The Class**: All persons in California who, during the applicable Class Period, purchased or leased a Dodge Demon in California.

35.    Subject to additional information obtained through further investigation and discovery, the foregoing definitions of the Class may be expanded or narrowed by amendment or amended complaint.

36.    Specifically excluded from the Class are any members of the judiciary assigned to preside over this matter, any officer, director, or employee of Defendants; and any immediate family member of such officer, director, or employee.

(a)  **Numerosity**: A class action is the only available method for the fair and efficient adjudication of this controversy. The members of the Class are so numerous that joinder of all members is impractical, if not impossible, insofar as Plaintiff is informed and believes and, on that basis, alleges that the total number of Class members are, at least, above 300. Members in the Class will be determined by and upon analysis of Defendants' customers' records including complaints, among other records maintained by Defendants, and communications between Defendants and its Regional Business Centers and Parts Distribution Centers and Defendants' affiliates.

(b)  **Existence and Predominance of Common Questions**: Plaintiff and the Class share a community of interests in that there are numerous common questions and issues of fact, all of which predominate over any questions and issues solely affecting individual members, including, but not necessarily limited to:

(1)  Whether Defendants engaged and/or continue to engage in False Advertising in violation of California Business & Professions Code §§ 17500, *et seq.*, by falsely advertising that the vehicle comes with 840 horsepower and a fully functional hood scoop, that Defendants would honor their warranties, and that the Dodge Demon was of a particular grade and quality.

(2)  Whether Defendants violated and/or continue to violate the Song-Beverly Consumer Warranty Act §§ 1790 since the Dodge Demon suffers from a nonconformity that substantially impairs its use, value, and/or safety, which Defendants have been unable to repair as it relates to Plaintiff and the Class.

(3)  Whether Defendants violated and/or continue to violate the Song-Beverly Consumer Warranty Act §§ 1790 since the Dodge Demon (a) would not pass without objection in trade under the contract description; (b) is unfit for the ordinary purposes for which the Class Vehicles would be used; and/or (c) cannot be made to conform to the promises or affirmations of fact made on the Dodge Demon's labeling as it relates to Plaintiff and the Class.

(4)  Whether Defendants violated and continue to violate the Song-Beverly Consumer Warranty Action §§ 1790, *et seq.,* by failing to maintain sufficient authorized service and repair facilities in the State of California reasonably close to all areas where the Dodge Demon is sold to carry out the terms of its warranties or designate and authorize in the State of California as service or repair facilities independent repair or service facilities reasonably close to all areas where its consumer goods are sold to carry out the terms of the warranties, or provide sufficient repair literature and replacement parts to the same.

(5)  Whether Defendants violated and/or continue to violate Consumer Legal Remedies Act §§ 1750, *et seq.,* by falsely representing that the vehicle comes with 840 horsepower, that the hood scoop was functional, that performance is not impaired by the very use of the Dodge Demon, that Defendants would honor their warranties, that the

"engineers reviewed every part and piece," and that the Dodge Demon was "accessorized to build upon its exclusivity and future collectability" as it relates to Plaintiff and the Class.

(6) Whether Defendants engaged and/or continue to engage in Unfair Business Practices in Violation of California Business & Professions Code §§ 17200, *et seq.*, through its use of unfair, deceptive, untrue, or misleading advertising as it relates to Plaintiff and the Class.

(7) Whether Defendants breached and/or continues to breach the express warranty that the hood scoop was functional, that performance is not impaired by the very use of the Dodge Demon, that the "engineers reviewed every part and piece," and that the Dodge Demon was "accessorized to build upon its exclusivity and future collectability," as it relates to Plaintiff and the Class.

(8) Whether Defendants engaged in and/or continue to engage in conduct that amounts to Fraudulent Concealment in that they misrepresented the characteristics of the Dodge Demon and/or actively concealed defects and other facts, as it relates to the Plaintiff and the Class.

(9) Whether Defendants negligently misrepresented that the vehicle comes with 840 horsepower, that the hood scoop was functional, that performance is not impaired by the very use of the Dodge Demon, that Defendants would honor their warranties, that the "engineers reviewed every part and piece," and that the Dodge Demon was "accessorized to build upon its exclusivity and future collectability" as it relates to Plaintiff and the Class.

(10) Whether Defendants were unjustly enriched by offering a limited production of the Dodge Demon that was marketed and sold for its future collectability with certain attributes that were untrue and when the Hood Scoop Defect substantially impacts the value, aesthetic, and performance, as it relates to the Plaintiff and the Class.

(c) **Typicality**: The Class claims are typical of the claims of the Plaintiff. Plaintiff and all members of the Class sustained injuries and damages arising out of and caused by Defendants' common course of conduct in violation of state laws, as alleged herein.

(d) **Adequacy of Representation**: Plaintiff is an adequate representative of the Class, in that Plaintiff's claims are typical of those of the Class.  Plaintiff has the same interests in the litigation of this case as the Class.  Plaintiff is committed to vigorous prosecution of this case, and has retained competent counsel, experienced in litigation of this nature. Plaintiff is not subject to any individual defenses unique from those conceivably applicable to the class as a whole. Plaintiff anticipates no management difficulties in this litigation.

(e) **Superiority of Class Action**: A class action is superior to any methods available for both the fair and efficient adjudication of the rights of each class member. Joinder of individual Class members is impracticable. Individual litigation would be unnecessarily costly and burdensome and would deter individual claims. To

process individual cases would increase both the expenses and the delay not only to the Class, but also to Defendants and the Court. In contrast, a class action in this matter will avoid case management difficulties and provide multiple benefits to the litigating parties, including efficiency, economy of scale, unitary adjudication with consistent results and equal protection of the rights of each class member, all by way of the comprehensive and efficient supervision of the litigation by a single court.

37.    The Class may be certified because:

(1) The prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual members of the proposed Class that would establish incompatible standards of conduct for Defendants;

(2) The prosecution of separate action by individual Class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications or substantially impair or impede their ability to protect their interests; and

(3) Defendants has acted or refused to act on grounds generally applicable to the Class members, thereby making appropriate final and injunctive relief with respect to the Class as a whole.

## <u>CAUSES OF ACTION</u>

### <u>FIRST CAUSE OF ACTION</u>
**False Advertising Law**
**(Violation of California Business & Professions Code §§ 17500, *et seq.*)**
**(On Behalf of Plaintiffs and the Class)**

38.    Plaintiff, individually and on behalf of the Class, incorporates in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

39.    California's False Advertising Law (Cal. Bus. & Prof. Code §§ 17500, *et seq.*) ("FAL"), prohibits unfair, deceptive, untrue, or misleading advertising.  The Cal. Bus. Prof. Code § 17500 specifically prohibits:

[a]ny person . . . to make or disseminate or cause to be disseminated from this state before the public in any state . . . in any advertising device . . . or in any manner or means whatever, including over the internet any statement concerning . . . personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known or which by exercise of reasonable care should be known, to be untrue or misleading.

-12-

40.     Defendants falsely advertised and promoted over the internet and in their promotional materials that the Class Vehicle came standard with 840 horsepower and that the hood scoop was functional, that it was free from defects, that performance was not impaired by the very use of the Class Vehicle, that the "engineers reviewed every part and piece," and that the Class Vehicle was "accessorized to build upon its exclusivity and future collectability."

41.     These advertisements, inducements and representations, on its blogs, websites, and other promotional materials, come within the meaning of false advertising as defined in Cal. Bus. & Prof. Code §§ 17500, *et seq*., in so much that they were intended as inducements for car enthusiasts to purchase the limited Dodge Demon.

42.     Defendants knew or should have known that these statements were deceptive and misleading because, among other things, the vehicle actually came standard with 808 horsepower and Defendants claimed that the engineers reviewed every part and piece. Defendants false advertisements were calculated to induce Plaintiff and the Class to purchase the Class Vehicle — they otherwise would not have purchased or would have otherwise purchased the Class Vehicle for less — to increase profits and ratings.

43.     Defendants' actions caused injury to Plaintiff and the Class because: a) they would not have purchased the product if they had known that the Class Vehicle did not have the functionality or performance features as expressly warranted by Defendants or they would have paid substantially less for the Class Vehicle; (b) they paid a premium price for the Class Vehicle as a result of Defendants' false warranties and misrepresentations; and (c) they purchased a Class Vehicle that did not have the functionality, performance features, qualities, grade, or value promised by Defendants.

44.     Defendants have improperly obtained money or else caused Plaintiff and the Class to unnecessarily expend time and resources to remedy the Hood Scoop Defect through their unfair acts and practices.   Thus, Plaintiff requests that Defendants restore this money to Plaintiff and the Class and enjoin FCA US LLC from continuing to violate Cal. Bus. & Prof. Code §§ 17500, *et seq*., in the future.

45.     Pursuant to Cal. Code Civ. Proc. § 1021.5, Plaintiff and the Class also request that the Court award reasonable attorneys' fees and costs.

## SECOND CAUSE OF ACTION
### Violation of Express Warranty Under the Song-Beverly Consumer Warranty Act (Cal. Civ. Code §§ 1790 *et seq.*)
### (On Behalf of the Plaintiff and the Class)

46.     Plaintiff, individually and on behalf of the Class, incorporates in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

47.     Defendants' Class Vehicle is a "consumer good" and Plaintiff and the Class are "buyers" within the meaning of Cal. Civ. Code § 1791.  Defendants are also a "manufacturer," "distributor," or "retail seller" under Cal. Civ. Code § 1791.

48.     In connection with the sale of its Class Vehicle, Defendants provided written, oral and implied warranties, and a Basic Limited Warranty that provides as follows:

> The Basic Limited Warranty covers the cost of all parts and labor needed to repair any item on your vehicle when it left the manufacturing plant that is defective in material, workmanship or factory preparation. There is no list of covered parts since the only exception are tires and unwired headphones. You pay nothing for these repairs.  These warranties repairs or adjustments -- including all parts and labors connected with them – will be made by your dealer at no charge, using new or remanufactured parts.

49.     Within the applicable warranty period, Plaintiff and the Class delivered the Class Vehicle to authorized repair facilities due to the Hood Scoop Defect.  These authorized repair facilities, however, were unable to conform the Class Vehicle to the applicable warranties, depriving each individual of the use of the Class Vehicle.

50.     Even though Plaintiff and the Class performed each and every duty required under the terms of the warranty agreement and under the provisions of the Song-Beverly Consumer Warranty Act, Defendants failed to repair the defective and nonconforming Class Vehicle as warranted, which suffers and continues to suffer from the defective conditions that substantially impair the Class Vehicle's use, value and safety.

51.    Under Cal. Civ. Code §§ 1791.1(d) and 1794, Plaintiff and the Class are entitled to damages and other legal and equitable relief, including, at their election, the right to revoke acceptance of the Class Vehicle or the overpayment or diminution in value of the Class Vehicle, and are also entitled to reasonable attorneys' fees and costs.

52.    Because Defendants' willful refusal to comply with the provisions of the Song-Beverly Consumer Warranty Act is entirely unreasonable and in violation of Civil Code §§ 1793.2 and 194(c), Plaintiff and the Class are entitled to penalties of up to two times the damages.

### THIRD CAUSE OF ACTION
**Violation of Implied Warranty Under the Song-Beverly Consumer Warranty Act**
**(Cal. Civ. Code §§ 1790 *et seq.*)**
**(On Behalf of the Plaintiff and the Class)**

53.    Plaintiff, individually and on behalf of the Class, incorporates in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

54.    Defendants' Class Vehicle is a "consumer good" and Plaintiff and the Class are "buyers" within the meaning of Cal. Civ. Code § 1791. Defendants are also a "manufacturer," "distributor," or "retail seller" under Cal. Civ. Code § 1791.

55.    Plaintiff and the Class bought the Class Vehicle in California.

56.    Defendants provided Plaintiff and the Class with an implied warranty that the Class Vehicle and the parts thereof were merchantable and fit for the ordinary purposes for which they were sold and advertised.

57.    This implied warranty included, *inter alia*, that the Class Vehicles are "one-of-a-kind" and a future collectible vehicle. Defendants had reason to know that car enthusiast would use the Class Vehicle in accordance with its ordinary and advertised use. Indeed, by manufacturing and selling an exclusive Class Vehicle, Defendants knew that buyers would rely on their skill and judgment when purchasing the Class Vehicle, and Plaintiff and the Class did in fact rely on their representations. Moreover, since the Class Vehicle was marketed as an exclusive vehicle with certain attributes, qualities, grades and future collectability, the lower

-15-

horsepower and/or the Hood Scoop Defect makes them unpassable without objection in trade under the contract descriptions and unfit for the ordinary purposes for which the Class Vehicle was designed.

58.    Furthermore, Defendants have been provided with numerous opportunities to cure the defects but failed to do so; the December 4, 2019 Technical Service Bulletin's so-called fix falls short and there have been no guarantees of workmanship or certification for repainting.

59.    Defendants' actions have deprived Plaintiff and the Class of the benefit of their bargain and have caused the Class Vehicle to be worth less than what they paid, as well as substantially impairs its future use, value, and/or safety, and collectability.   In addition, Defendants failed to repair issues that arise under the implied warranty.

60.    As a direct and proximate result of Defendants breaching their duties, Plaintiff and the Class received the Class Vehicle with substantially impaired value.  Plaintiff and the Class have been damaged by the diminished value of the Class Vehicle, the Class Vehicle's malfunctioning, and actual and potential increased maintenance and repair costs.

61.    Under Cal. Civ. Code §§ 1791.1(d) and 1794, Plaintiff and the Class are entitled to damages and other legal and equitable relief, including, at their election, the right to revoke acceptance of the Class Vehicle or the overpayment or diminution in value of their Class Vehicle, and are also entitled to reasonable attorneys' fees and costs.

### FOURTH CAUSE OF ACTION
**Violation of Manufacturer's Duties Under the Song-Beverly Consumer Warranty Act**
**(Cal. Civ. Code §§ 1790 *et seq.*)**
**(On Behalf of the Plaintiff and the Class)**

62.    Plaintiff, individually and on behalf of the Class, incorporates in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

63.    Defendants' Class Vehicle is a "consumer good" and Defendants are a "manufacturer" under Cal. Civ. Code § 1791.

64.    The Class Vehicle is sold in California.

-16-

65.    In connection with the sale of its Class Vehicle, Defendants provide express warranties that cover "the cost of all parts and labor needed to repair any item on your vehicle when it left the manufacturing plant that is defective in material, workmanship or factory preparation."

66.    Pursuant to Cal. Civil Code § 1793.2(a)(1) and (3), Defendants are obligated to (a) "[m]aintain sufficient service and repair facilities reasonably close to all areas where [the Dodge Demons] are sold to carry out the terms of [its] warranties or designate and authorize in this state as service or repair facilities independent repair or service facilities reasonably close to all areas where its consumer goods are sold to carry out the terms of the warranties . . ." and (b) "[m]ake available to authorized service and repair facilities sufficient literature and replacement parts to effect repairs during the express warranty period."

67.    Despite these obligations, Defendants fail to maintain and/or designate authorized repair facilities that are able to guarantee that paint repairs, necessitated by the Hood Scoop Defect, will conform to the factory specifications in violation of its obligation to carry out its warranties.

68.    As a result, Plaintiff and the Class is denied the benefit of authorized service and repair facilities reasonably close to where Defendants' goods are sold.

69.    Additionally, Defendants failed to commence service and repair of the Class Vehicle within a reasonable time after the defect arose and/or within 30 days.

70.    Based on Defendants' continuing breach of its obligations under Cal. Civil Code § 1793.2(a), Plaintiff and the Class are entitled to reimbursement for repair costs and injunctive relief.

## FIFTH CAUSE OF ACTION
**Violation of the California Consumer Legal Remedies Act**
**(Cal. Civ. Code §§ 17500, *et seq*.)**
**(On Behalf of the Plaintiff and the Class)**

71.    Plaintiff, individually and on behalf of the Class, incorporates in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

-17-

72.    This cause of action is brought pursuant to the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 17500, *et seq.*

73.    Plaintiff and the Class are "consumers" within the meaning of Cal. Civ. Code § 1761(d).

74.    The sale of the Class Vehicles to Plaintiff and the Class were "transactions" within the meaning of Cal. Civ. Code § 1761(e).

75.    The Class Vehicle purchased by Plaintiff and the Class are "goods" within the meaning of Cal. Civ. Code § 1761(a).

76.    As alleged herein, Defendants falsely advertised that the vehicle came standard with 840 horsepower and that the hood scoop was functional, that performance is not impaired by the very use of the Class Vehicle, that the "engineers reviewed every part and piece," that the Class Vehicle was "accessorized to build upon its exclusivity and future collectability," and that Defendants would honor their warranty.  Specifically, Defendants violated Cal. Civ. Code § 1770(a)(7), which prohibits "[r]epresenting that goods are of a particular standard, quality, or grade . . ."; § 1770(a)(14) "[r]epresenting that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law."

77.    Plaintiff and the Class reasonably relied on Defendants' false representations that the Class Vehicle came standard with 840 horsepower and that the hood scoop was functional, that performance was not impaired by  the very use of the Class Vehicle, that the "engineers reviewed every part and piece," that the Dodge Demon was "accessorized to build upon its exclusivity and future collectability," and that Defendants would honor their warranty. Plaintiff and the Class would not have purchased the Class Vehicle or would have paid significantly less for the Class Vehicle, but for Defendants' unlawful conduct.  Plaintiff and the Class were likely to also have relied upon Defendants' deceptive advertising and promotional materials.  Plaintiff and the Class acted reasonably when they purchased the Class Vehicle based on Defendants' false representations.

78.    As a result of Defendants' false representations, Plaintiff and the Class were injured because they: a) they would not have purchased the product if they had known that the

Class Vehicle did not have the functionality or performance features as expressly and impliedly warranted by Defendants or they would have paid substantially less for the Class Vehicle; (b) they paid a premium price for the Class Vehicle as a result of Defendants' false warranties and misrepresentations; and (c) they purchased a Class Vehicle that did not have the functionality, performance features, qualities, or value promised by Defendants.

79.     Under Cal. Civ. Code § 1780(a) and (d), Plaintiff and the Class seek damages, as well as injunctive and equitable relief for Defendants' violations of the CLRA.

**SIXTH CAUSE OF ACTION**
**Unfair Business Practices**
**(Violation of Cal. Bus. & Prof. Code §§ 17200, *et seq*.,)**
**(On Behalf of the Plaintiff and the Class)**

80.     Plaintiff, individually and on behalf of the Class, incorporates in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

81.     California's Unfair Business Practices Law prohibits (Cal. Bus. & Prof. Code § 17200, § *et seq*.) ("UCL") defines unfair business practice to include "unlawful, unfair, or fraudulent" act or practice as well as "any unfair, untrue, or misleading" advertising. A business act is unlawful if it violates any other law or regulation.

82.     A business act or practice is "unfair" under the UCL if the reasons, justifications and motives of the alleged wrongdoer are outweighed by the gravity of the harm to the alleged victims. A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the consuming public. A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

83.     Defendants have engaged in fraudulent and unfair business practices as it relates to the marketing and sale of the Dodge Demon.

84.     The business acts and practices alleged herein are unfair because they caused Plaintiff and the Class to falsely believe that Defendants were offering a Class Vehicle with certain horsepower and aesthetic and performance features without defect. This deception was likely to have induced reasonable consumers, including Plaintiff and the Class, to purchase

-19-

Defendants' Class Vehicle, which they otherwise would not have purchased, or would have paid substantially less for the Class Vehicle.

85.     The gravity of the harm to Plaintiff and the Class resulting from these unfair acts and practices outweighs any conceivable reasons, justifications and/or motives of Defendants for engaging in such deceptive acts and practices.  By committing the acts and practices alleged herein, Defendants engaged in, and continue to engage in, unfair business practices within the meaning of Cal. Bus. & Prof. Code §§ 17200, et seq.

86.     Defendants have also violated the "unlawful" prong of the UCL by violating several California laws, as alleged herein, including the FAL and CLRA.

87.     Defendants have also violated the "fraudulent" prong of the UCL by misleading Plaintiffs and the Class to believe that the Class Vehicle came standard with 840 horsepower and that the hood scoops were functional, that performance is not impaired by  the very use of the Class Vehicle, that the "engineers reviewed every part and piece," and that the Class Vehicle was "accessorized to build upon its exclusivity and future collectability."

88.     As a result of Defendants' unlawful acts, Plaintiff and the Class were injured because they: a) they would not have purchased the product if they had known that the Class Vehicle did not have the functionality or performance features as expressly warranted by Defendants or they would have paid substantially less for the Class Vehicle; (b) they paid a premium price for the Class Vehicle as a result of Defendants' false warranties and misrepresentations; and (c) they purchased a Class Vehicle that did not have the functionality, performance features, qualities, or value promised by Defendants.  Therefore, Plaintiff requests that this Court cause Defendants to restore this money to Plaintiff and the Class, and to enjoin Defendant from continuing to violate the UCL as alleged herein.

## SEVENTH CAUSE OF ACTION
### Breach of Express Warranty
### (On Behalf of the Plaintiff and the Class)

89.     Plaintiff, individually and on behalf of the Class, incorporates in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

-20-

90.     In connection with the sale of the Class Vehicle, Defendants issued express warranties that the Dodge Demon comes standard with 840 horsepower, a fully functional hood scoop, that Defendants would warrant the Dodge Demon, that performance is not impaired by the very use of the Dodge Demon, that the "engineers reviewed every part and piece," and that the Dodge Demon was "accessorized to build upon its exclusivity and future collectability."

91.     Defendants' affirmation of fact and promise in the advertisements and promotional materials that the Class Vehicle comes standard with 840 horsepower, have a functional hood scoop, that performance is not impaired by the very use of the Dodge Demon, that the "engineers reviewed every part and piece," that the Dodge Demon was "accessorized to build upon its exclusivity and future collectability," and that Defendants would warrant the Class Vehicle became the basis of the bargain between Defendants and Plaintiff and the Class, thereby creating express warranties that the Class Vehicle would conform to Defendants' affirmation of fact, representations, promise, and description.

92.     Similarly, Defendants created written express warranties and expressly warranted to Plaintiff and the Class that the Class Vehicles would be of high quality and grade, at a minimum would work properly and comfortably, and would be free from defects and fit for normal use.  Defendants also expressly warranted that certain defects, including the Hood Scoop Defect, would be remedied at no cost to the purchaser.

93.     Defendants breached these warranties, thus denying Plaintiff and the Class the benefit of their bargain. Put simply, the Class Vehicle at issue here does not live up to Defendants' express warranties.

94.     Plaintiff and the Class were injured because they: a) they would not have purchased the product if they had known that the Class Vehicle did not have the functionality or performance features as expressly warranted by Defendants or they would have paid substantially less for the Class Vehicle; (b) they paid a premium price for the Class Vehicle as a result of Defendants' false warranties and misrepresentations; and (c) they purchased a Class Vehicle that did not have the functionality, performance features, qualities, or value promised by Defendants.

## EIGHTH CAUSE OF ACTION
### Fraudulent Concealment
### (On Behalf of the Plaintiff and the Class)

95.     Plaintiff, individually and on behalf of the Class, incorporates in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

96.     Defendants were aware of the Hood Scoop Defect when they marketed and sold the Class Vehicle to Plaintiffs and the Class.  Defendants were also aware that the Class Vehicle only had 808 horsepower and required an upgrade and racing fuel to reach 840 horsepower.

97.     Having been aware of the Hood Scoop Defect in the Class Vehicle, and being fully aware that Plaintiff and the Class could not have, or should not have, reasonably been expected to know of the Hood Scoop Defect, or the true performance measures, Defendants, based on their continued false and misleading representations, had a duty to disclose the Hood Scoop Defect  and truthfully advertise the Class Vehicle's standard horsepower to Plaintiff and the Class in connection with the sale or lease of the Class Vehicle.

98.     Defendants materially misrepresented and/or actively concealed material facts, such as the Hood Scoop Defect and the Class Vehicle's actual horsepower, in whole or in part, intending to induce Plaintiff and the Class to purchase the Class Vehicle and to purchase those vehicles at a higher price than Plaintiff and the Class would have otherwise paid..

99.     Plaintiffs and the Class were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts.  Had Plaintiff and the Class known of the Hood Scoop Defect, they would not have purchased the Class Vehicle or would have paid substantially less for the Class Vehicles.

100.     Because of the concealment and/or suppression of material facts regarding the Class Vehicle, Plaintiff and the Class sustained damages in an amount to be determined at trial.

/ / /

/ / /

## NINTH CAUSE OF ACTION
### Negligent Misrepresentation
### (On Behalf of the Plaintiff and Class)

101.    Plaintiff, individually and on behalf of the Class, incorporates in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

102.    Defendants represented and led consumers to believe that the vehicle came standard with 840 horsepower and that the hood scoop was functional, that it was free from defects, that performance was not impaired by  the very use of the Class Vehicle, that the engineers reviewed every part and piece, and that the Dodge Demon was "accessorized to build upon its exclusivity and future collectability."

103.    Defendants knew or should have known that these statements were deceptive and misleading at the time they were made.

104.    Defendants materially misrepresented and/or actively concealed material facts, such as the Hood Scoop Defect and the Class Vehicle's actual horsepower, in whole or in part, intending to induce Plaintiff and the Class to purchase the Class Vehicle and to purchase those vehicles at a higher price than Plaintiff, the Class, and Subclass members otherwise would have.

105.    Based on the above, Plaintiff and the Class members paid more for the Class Vehicle.  Plaintiff and the Class were unaware of the truth and would not have acted as they did if they had known of the concealed and/or otherwise misrepresented facts.  Because of the concealment and misrepresentation of material facts regarding the Class Vehicle, Plaintiff and the Class sustained damages in an amount to be determined at trial.

## TENTH CAUSE OF ACTION
### Unjust Enrichment
### (On Behalf of the Plaintiff and the Class)

106.    Plaintiff, individually and on behalf of the Class, incorporates in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

-23-

107.    As a result of Defendants' wrongful and deceptive conduct, Plaintiff and the Class members have suffered a detriment while Defendants have received a benefit.

108.    Plaintiff and the Class have conferred a benefit on Defendants by purchasing the Class Vehicle with the Hood Scoop Defect.  Defendants received a premium price benefit and/or additional sales from Plaintiff and the Class as a result of this unlawful conduct. Defendants appreciate or have knowledge of such benefit.

109.    Defendants' retention of this benefit violates principles of justice, equity, and good conscience.  Indeed, Defendants should not be allowed to retain the premium price profits and/or additional sales generated from the sale of products that were unlawfully marketed, advertised and promoted.  Allowing Defendants to retain these unjust profits would offend traditional notions of justice and fair play and induce companies to misrepresent key characteristics of their products in order to increase sales.

110.    Plainly stated, it would be inequitable and unjust for Defendants to retain the benefit of revenues obtained from purchases of its Class Vehicle, because Defendants materially misrepresented the functionality, performance features, qualities, and value.

111.    Thus, Defendants are in possession of funds that were wrongfully retained from Plaintiff and the Class that should be disgorged as illegally gotten gains.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment as follows:

A.    An order declaring that this action may be maintained as a Class Action pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), 23(b)(3), and for an order certifying this case as a class action and appointing Plaintiff as representative of the Class.

B.    A declaration that Defendants' actions, as described herein, violate the claims described herein;

C.    An award of injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and the Class, including, *inter alia*, an order prohibiting Defendants from engaging in the unlawful act described above;

D.      An award to Plaintiff and the Class of restitution and/or other equitable relief, including, without limitation, disgorgement of all profits and unjust enrichment that Defendants obtained from Plaintiff sand the Class as a result of its unlawful, unfair and fraudulent business practices described herein;

E.      For judgment for Plaintiff and the Class on their claims in an amount to be proven at trial, for compensatory damages caused by Defendants' practices; along with exemplary damages to each Class member for each violation;

F.      For pre-judgment and post-judgment interest as provided for by law or allowed in equity;

G.      For an order awarding Plaintiff and the Class their attorneys' fees and costs; and

H.      Such other and further relief as may appear necessary and appropriate.

Respectfully Submitted,

LAW OFFICES OF CONNOR W. OLSON

Dated:  November 5, 2020

By: _____

**Connor W. Olson**, SBN 291493
520 Capitol Mall, Suite 150
Sacramento, CA 95814
connor@cwo-law.com
Phone: 916-905-7276

**Tiangay M. Kemokai**, SBN 331807
Tiangay Kemokai Law, P.C.
520 Capitol Mall, Suite 150
Sacramento, CA 95814
info@tiangaykemokai-law.com
Phone: 916-213-0908

**Attorneys for Representative Plaintiff and Putative Class**

-25-

## DEMAND FOR JURY TRIAL

Plaintiff and the Classes hereby demand trial by jury of all issues triable as of right by jury.


**LAW OFFICES OF CONNOR W. OLSON**


Dated:  November 5, 2020

By: _____

*Connor W. Olson*, **SBN 291493**
**Law Offices of Connor Olson**
520 Capitol Mall, Suite 150
Sacramento, CA 95814
connor@cwo-law.com
Phone: 916-905-7276

*Tiangay M. Kemokai*, **SBN 331807**
Tiangay Kemokai Law, P.C.
520 Capitol Mall, Suite 150
Sacramento, CA 95814
info@tiangaykemokai-law.com
Phone: 916-213-0908

**Attorneys for Representative Plaintiff
and Putative Class**

-26-