Ryan E. Cosgrove, Bar # 277907
ryan.cosgrove@nelsonmullins.com
NELSON MULLINS RILEY & SCARBOROUGH LLP
19191 South Vermont Avenue, Suite 900
Torrance, California 90502
Tel: (424) 221-7400 / Fax: (424) 221-7499

Stephen A. D'Aunoy (*pro hac vice*)
sdaunoy@thompsoncoburn.com
Thomas L. Azar, Jr. (*pro hac vice*)
tazar@thompsoncoburn.com
THOMPSON COBURN LLP
One US Bank Plaza
St. Louis, MO 63101
Tel: (314) 552-6000 / Fax: (314) 552-7000

*Attorneys for Defendant, FCA US LLC*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOE PERALTA, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FCA US LLC, *et al.*,<br><br>Defendants. | Case No. 5:20-cv-02307-JWH-SHK<br><br><br>**FCA US LLC'S NOTICE OF MOTION AND RULE 12(b)(6) MOTION TO DISMISS CLASS ACTION COMPLAINT AND TO DISMISS/STRIKE CLASS ALLEGATIONS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>**[CLASS ACTION]**<br><br>**DATE:** February 12, 2021<br><br>**TIME:** 9:00 a.m.<br><br>**JUDGE:** Hon. John W. Holcomb<br><br>**COURTROOM:** 2 |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on February 12, 2021 at 9:00 a.m., or as soon thereafter as counsel may be heard, in Courtroom 2 of the above-captioned court, located at 3470 12th Street, Riverside, California  92501, Defendant FCA US LLC will and hereby does move this Court for an order pursuant to Federal Rule of Civil Procedure 12(b)(6) dismissing the Class Action Complaint filed by Plaintiff Joe Peralta for failure to state any legally cognizable claim, and, alternatively, to dismiss or strike the class allegations in the Complaint.

This motion is based on this Notice of Motion, FCA US's Memorandum of Points and Authorities, and on such other and further matters as may be presented to the Court at or prior to the hearing.

This motion is made following the conference of counsel pursuant to the Court's standing order which took place on January 4, 2021.

DATED:  January 8, 2021

**NELSON MULLINS RILEY & SCARBOROUGH LLP**

By:  */s/ Ryan E. Cosgrove*
Ryan E. Cosgrove

*Attorneys for Defendant FCA US LLC*

# **TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ..................................................................................1

II.  FACTS ALLEGED BY PLAINTIFF ....................................................1

    A.   The Alleged "Hood Scoop" Defect And Allegations About Horsepower. ................................................................................1

    B.   Plaintiff's Vehicle Purchase and Experiences. ...........................2

    C.   The Basic Limited Warranty. .....................................................4

    D.   The Alleged Advertisements. .....................................................4

    E.   The Claims Pleaded, Proposed Classes, And Relief Sought. ...............5

III. ARGUMENT ......................................................................................7

    A.   The Governing Legal Standard. ..................................................7

    B.   The Fraud-Based Claims Must Be Dismissed For Failure To Comply With Rule 9(b) (Counts I, V, VI, VIII, IX, X). .......................7

    C.   The Lack Of Facts Supporting The "Unlawful" And "Unfair" UCL Claims (Count VI). .........................................................12

    D.   The Economic Loss Rule Bars The Fraudulent Concealment Claim (Count VIII) And The Negligent Misrepresentation Claim (Count IX). .................................................................13

    E.   No False Statement To Support The Negligent Misrepresentation Claim (Count IX). ..........................................14

    F.   The Express Warranty Claims Are Legally Insufficient (Counts II, VII). .....................................................................14

    G.   Implied Warranty Claim (Count III). .......................................17

    H.   The Song-Beverly "Violation of Manufacturer's Duties" Claim Fails (Count IV). ..............................................................18

    I.   Additional Bases For Dismissing Unjust Enrichment Claim (Count X). .............................................................................19

    J.   Alternatively, The Class Allegations Should Be Dismissed/Stricken. ................................................................20

IV.  CONCLUSION ................................................................................23

i

FCA US LLC'S NOTICE OF MOTION AND RULE 12(b)(6) MOTION TO DISMISS CLASS ACTION COMPLAINT
AND TO DISMISS/STRIKE CLASS ALLEGATIONS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acedo v. DMAX, Ltd.*, 2015 WL 12912365 (C.D.Cal. 2015) .................................. 16

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .................................................................. 7

*Avedisian v. Mercedes-Benz USA, LLC*, 43 F.Supp.3d 1071 (C.D. Cal. 2014) ...... 18

*Banh v. Am. Honda Motor Co., Inc.*, 2019 WL 8683361 (C.D.Cal. 2019) ............. 8

*Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708 (9th Cir. 2010) ........................ 22

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ..................................................... 7

*Brown v. Nat'l Life Ins. Co.*, 2013 WL 12096508 (C.D.Cal. 2013) ....................... 21

*Bunce v. Ocwen Loan Servicing, LLC*, 2013 WL 3773950 (E.D.Cal. 2013) ............................................................................................................ 9

*Cannarella v. Volvo Car USA LLC*, 2016 WL 9450451 (C.D.Cal. 2016) ............. 19

*Castel S.A. v. Wilson*, 2000 WL 4003024 (C.D.Cal. 2020) .................................... 11

*Chong v. Nestle Waters N. Am., Inc.*, 2020 WL 7690175 (C.D.Cal. 2020) ............ 11

*Colgate v. JUUL Labs, Inc.*, 402 F.Supp.3d 728 (N.D.Cal. 2019) ......................... 14

*Cooper v. Simpson Strong-Tie Co., Inc.*, 460 F.Supp.3d 894 (N.D.Cal. 2020) ............................................................................................................ 11

*Culley v. Lincare Inc.*, 2017 WL 3284800 (E.D.Cal. 2, 2017) .............................. 22

*Espineli v. Toyota Motor Sales U.S.A., Inc.*, 2018 WL 3769383 (E.D.Cal. 2018) ................................................................................................ 15

*Flores v. Starwood Hotels & Resorts Worldwide, Inc.*, 2015 WL 12912337 (C.D.Cal. 2015) ................................................................................. 20

*Garlough v. FCA US LLC*, Case No. 2:20-cv-01879 (E.D.Cal), ECF #17 .................................................................................................................. 1, 23

*Gertz v. Toyota Motor Corp.*, 2011 WL 13142144 (C.D.Cal. 2011) ...................... 9

*Girard v. Toyota Motor Sales, U.S.A., Inc.*, 316 Fed.Appx. 561 (9th Cir. 2008) ...................................................................................................... 19

*Gray v. Toyota Motor Sales, USA*, 2012 WL 313703 (C.D.Cal. 2012) .............. 7, 12

*Hernandez v. FCA US LLC*, 2020 WL 4732061 (S.D.Cal. 2020) ......................... 13

*Herrera v. Volkswagen Grp. of Am., Inc.*, 2016 WL 10000085 (C.D.Cal. 2016) ................................................................................................ 12

ii

FCA US LLC'S NOTICE OF MOTION AND RULE 12(b)(6) MOTION TO DISMISS CLASS ACTION COMPLAINT
AND TO DISMISS/STRIKE CLASS ALLEGATIONS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

*Hodgson v. Roper*, 2020 WL 5039405 (E.D.Cal. 2020) .......................................... 14

*In re Ford Motor Co. DPS6 Powershift Transmission Prod. Liab. Lit*.,
2019 WL 3000646 (C.D.Cal. 2019)......................................................................... 10

*In re Ford Motor Co. DPS6 Powershift Transmission Prod. Liab.
Litig.*, 2020 WL 5267567 (C.D.Cal. 2020) ........................................................... 13

*In re NJOY, Inc. Consumer Class Action Litig.*, 2014 WL 12586074
(C.D.Cal. 2014) ........................................................................................................ 8

*In re Sony PS3 Other OS Litig.*, 551 Fed.Appx. 916 (9th Cir. 2014) .................... 19

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales
Practices, & Prod. Liab. Litig.*, 754 F.Supp.2d 1145 (C.D.Cal.
2010)........................................................................................................................ 16

*Kamm v. California City Dev. Co.*, 509 F.2d 205 (9th Cir. 1975)......................... 20

*Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009) ................................. 8, 9

*Kelley v. Rambus, Inc.*, 384 Fed.Appx. 570 (9th Cir. 2010)................................... 7

*Knievel v. ESPN*, 393 F.3d 1068 (9th Cir. 2005) ................................................... 4

*Linde, LLC v. Valley Protein, LLC*, 2019 WL 3035551 (E.D.Cal.
2019)........................................................................................................................ 13

*Lingad v. Indymac Fed. Bank*, 682 F.Supp.2d 1142 (E.D.Cal. 2010) ................... 13

*Loo v. Toyota Motor Sales, USA, Inc.*, 2019 WL 7753448 (C.D.Cal.
2019)........................................................................................................................ 15

*Lusson v. Apple, Inc.*, 2016 WL 6091527 (N.D.Cal. 2016)................................... 17

*McCoy v. Nestle USA, Inc.*, 730 Fed.Appx 462 (9th Cir. 2018) ........................... 11

*McKesson HBOC, Inc. v. New York State Common Ret. Fund, In*c.,
339 F.3d 1087 (9th Cir. 2003)............................................................................... 19

*Mercado v. Audi of Am., LLC*, 2019 WL 9051000 (C.D.Cal. 2019) ..................... 17

*Milman v. FCA US LLC*, 2018 WL 5867481 (C.D.Cal. 2018)........................ 12, 13

*Oddo v. Arcoaire Air Conditioning and Heating*, 2017 WL 372975
(C.D.Cal. 2017) ........................................................................................................ 4

*Puri v. Khalsa*, 674 Fed.Appx. 679 (9th Cir. 2017)................................................ 7

*Resnick v. Hyundai Motor Am., Inc.*, 2017 WL 1531192 (C.D.Cal.
2017)................................................................................................................... 13, 18

*Sallie Holly v. Alta Newport Hosp., Inc*, 2020 WL 6161457 (C.D.Cal.
2020)........................................................................................................................ 20

*Sater v. Chrysler Group LLC*, 2015 WL 736273 (C.D.Cal. 2015).................. 15, 16

iii

**FCA US LLC'S NOTICE OF MOTION AND RULE 12(b)(6) MOTION TO DISMISS CLASS ACTION COMPLAINT
AND TO DISMISS/STRIKE CLASS ALLEGATIONS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

*Shamamyan v. FCA US LLC*, 2020 WL 3643481 (C.D.Cal. 2020)....................... 10

*Sloan v. Gen. Motors LLC*, 2020 WL 1955643 (N.D.Cal. 2020) .................... 13, 19

*Stewart v. Electrolux Home Prod., Inc.*, 304 F.Supp.3d 894 (E.D.Cal. 2018)........................................................................................................ 13

*Taragan v. Nissan N. Am., Inc.*, 2013 WL 3157918 (N.D.Cal. 2013)................... 12

*Tietsworth v. Sears*, 720 F.Supp.2d 1123 (N.D.Cal. 2010) ................................. 20

*Troup v. Toyota Motor Corp.*, 545 Fed.Appx. 668 (9th Cir. 2013)................. 15, 17

*Twegbe v. Pharmaca Integrative Pharmacy, Inc.*, 2013 WL 3802807 (N.D.Cal. 2013)................................................................................... 22, 23

*UMG Recordings, Inc. v. Glob. Eagle Entm't, Inc.*, 117 F.Supp.3d 1092 (C.D.Cal. 2015) ................................................................... 10

*United States v. Ritchie*, 342 F.3d 903 (9th Cir. 2003) ........................................ 4

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003) ........................ 7, 8

*Von Brincken v. Mortgageclose.Com, Inc.*, 2011 WL 2621010 (E.D.Cal. 2011) ................................................................................. 19

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ........................................ 21

*Westgate v. Coloplast Corp.*, 2018 WL 6380746 (C.D.Cal. 2018) ........................ 8

**Statutes and Constitutional Provisions**

Cal. Civ. Code § 1750 ............................................................. 6, 7, 10, 12

Cal. Civ. Code § 1790 ................................................................................. 6

Cal. Civil Code § 1793.2 ........................................................................... 18

Cal. Com. Code § 2316 ............................................................................. 14

California Consumer Legal Remedies Act ................................................. 6

California's False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.*..................................................................................... 5, 7, 10

California Unfair Competition Law, Cal. Bus. and Prof. Code § 17200, *et seq.* ................................................................. 6, 7, 10, 12

Song-Beverly Act .................................................................................. 6, 18

Song-Beverly Consumer Warranty Act ................................................ 6, 18

**Rules & Regulations**

Federal Rule of Civil Procedure 9................................................... *passim*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Federal Rule of Civil Procedure 12 ................................................................................ 7

Federal Rule of Civil Procedure 23 ..................................................... 20, 21, 22, 23

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

This is a class action premised primarily on an alleged vehicle "defect" which causes cosmetic issues and nothing more.  According to Plaintiff Joe Peralta, the cosmetic changes to his vehicle entitle him to recoup the $166,000+ that he paid for it.[1]  Plaintiff admits that even as of the time he filed this case Defendant FCA US LLC was offering to fix the alleged cosmetic defect for free, but he refused this offer because, purportedly, a first attempted repair did not work.[2]  Plaintiff also makes allegations that the horsepower of his vehicle was misrepresented, but he unequivocally admits that his vehicle can operate at the alleged exaggerated horsepower if, as instructed, he uses the extra components he was provided with his vehicle and the type of fuel necessary to achieve it.[3]

The facts pleaded support no plausible claim.  And, with the amount of individual recovery at stake this is not the type of case suitable for class action treatment  In fact, Plaintiff's own counsel is pursuing at least one case based on identical allegations for a single individual who paid even less for his vehicle than did Plaintiff,[4] making clear that class treatment is not the superior method for adjudicating this controversy.  Thus, the Complaint should be dismissed in its entirety, or, alternatively, the class allegations should be dismissed.

## II.  FACTS ALLEGED BY PLAINTIFF

### A.    The Alleged "Hood Scoop" Defect And Allegations About Horsepower.

Plaintiff pleads that his vehicle has a "Hood Scoop Defect" which he claims causes the hood scoop component to sag, buckle, and bulge which, in turn, results

---

[1]Remarkably, after filing this case and professing to represent a class, Plaintiff offered a dismissal in exchange for a payment of $95,000.

[2]*See* Class Action Complaint, ECF #1 ("Comp.), ¶ 32.

[3]Comp., ¶ 27.

[4]*See Garlough v. FCA US LLC*, Case No. 2:20-cv-01879 (E.D.Cal), ECF #17.

in cracking and chipping paint on it and the vehicle hood.  Comp., ¶¶ 1, 21.  This is the extent of the pleaded facts relating to the nature of the alleged defect.  *See*, *generally*, Comp.  In addition, Plaintiff alleges his vehicle was advertised as having an engine with 840 horsepower, but he must install the additional components provided to him, and use "racing" fuel, in order for the vehicle to actually achieve 840 horsepower.  Comp., ¶¶ 15, 27.

There is ***not*** a single allegation in the Complaint that the alleged "hood scoop defect" impacts the functioning or use of Plaintiff's vehicle.  *See*, *generally*, Comp.  To the contrary, the facts pleaded act as a clear admission that a vehicle can be driven even if the alleged hood scoop defect manifests the cosmetic symptoms identified.  *See, e.g.,* Comp., ¶ 21 (consumer complaining alleged defect necessitates opening hood after driving); *id.* at ¶¶ 28-29 (Plaintiff admitting he waited a year to get a repair after "noticing" symptoms caused by the hood scoop defect); *id.* at ¶ 31 (Plaintiff admitting when repaired hood scoop showed symptoms from defect he continued to drive his vehicle with only issue being a need to press hood scoop back in place after vehicle use).

## B.   Plaintiff's Vehicle Purchase and Experiences.

According to Plaintiff, he "viewed countless advertisements" comprised of "pictures, videos, and written representations" related to the 840 horsepower and hood scoop aspects of the Dodge Demon vehicle.  Comp., ¶ 26.  After doing so, he "purchased the Dodge Demon in August 2018 in Ontario, California" at a price of $166,618.07.  *Id.* at ¶¶ 8, 26.  Plaintiff does ***not*** allege the model-year of his vehicle, who he purchased it from, or whether it was new or used.  *See*, *generally*, Comp.  But, he claims that "in late 2018," he "began noticing the Hood Scoop Defect" at which time he "contacted Dodge of Ontario California to report the defect and determine if there was a repair."  Comp., ¶ 28.  There are ***no*** allegations as to what Dodge of Ontario told Plaintiff "in late 2018."  *See*, *generally*, Comp.

There are *no* allegations that Plaintiff did anything more than simply "contact Dodge of Ontario "in late 2018." *Id.*

After apparently doing nothing for a year other than contacting Dodge of Ontario, "in September 2019" Plaintiff was "advised" there was a "fix" for the hood scoop component on his vehicle, and he had the fix performed.  Comp., ¶ 29.  Plaintiff does *not* indicate who "advised" him of the "fix" or how this information was conveyed to him.  *See*, *generally*, Comp.,  But, he complains the fix changed the tone of the paint on his vehicle to a "different finish," involved the use of "a different hood scoop" component, and required holes to be drilled into the hood of his vehicle.  Comp., ¶ 30.  Plaintiff does *not* aver that this "fix" was done without his authorization or knowledge of what it would entail.  *See*, *generally*, Comp.  However, according to Plaintiff, the newly installed hood scoop component "began 'bowing down' again" after one week.  Comp., ¶ 31.  Plaintiff was then offered a further fix for this issue, but "[b]ased on his prior experience," he "fears" it will fail, and thus, apparently, refused to have it performed.  *Id.* at ¶ 32.

Plaintiff admits that his Dodge Demon can operate with 840 horsepower if he installs certain components provided to him as a part of his vehicle purchase and uses "racing" fuel.  *Id.* at ¶ 27.  Yet, he complains that he did not learn of the need for these things "until he received [a] 'Dodge Demon Crate'" which had the components needed to "achieve the advertised horsepower" and from which he learned that he would have to use "racing fuel" to achieve 840 horsepower.  *Id.*

Plaintiff does *not* allege, even in a conclusory fashion, that his vehicle has ever been undrivable for any reason.  *See*, *generally*, Comp.  To the contrary, the admissions he makes support only the conclusion that he continued to drive his vehicle even with its alleged cosmetic defect.  For example, Plaintiff pleads that after "noticing" the alleged symptoms caused by the hood scoop defect he merely contacted a dealership and inquired about a repair, but then waited a year to actually get a repair.  Comp., ¶¶ 28-29.  And, he outright admits that when the

repaired hood scoop subsequently started showing the same symptoms he continued to drive his vehicle with the only issue being he had to "manually press the hood scoop insert back into place after every use." *Id.* at ¶ 31.

Notably, Plaintiff does ***not*** allege that his vehicle has ever failed to perform with 840 horsepower when equipped as directed. *Id.*  He does ***not*** allege that FCA US has ever failed to offer him a free repair as opposed to him simply not liking the free repair that was offered. *Id.*  And, Plaintiff does ***not*** claim that he ever paid anything out-of-pocket to repair any vehicle issue. *Id.*

**C.    The Basic Limited Warranty.**

According to Plaintiff, his vehicle was covered by a Basic Limited Warranty which "covers the cost of all parts and labor needed to repair any item on your vehicle when it left the manufacturing plant that is defective in material, workmanship or factory preparation."  Comp., ¶48; *see also* Dodge Warranty Information booklet, attached to FCA US's Request for Judicial Notice ("RJN") as Exhibit A, p. 5.[5]  That warranty notified Plaintiff that "[t]he warranties contained in this booklet are the only express warranties that FCA US LLC [] makes for your vehicle." *See* RJN at Exhibit A, p 4.

**D.    The Alleged Advertisements.**

The Complaint is devoid of Plaintiff having read/heard any specific advertisements, or when or where he did so. *See*, *generally*, Comp.  There are, however, scattered allegations of advertisements generally. *Id.*

---

[5]Because Plaintiff's claims rely on, and are dependent on, the Basic Limited Warranty this Court can take judicial notice it in deciding this motion to dismiss. *See, e.g., United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of plaintiff's claim"); *see also Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (taking judicial notice of document because plaintiffs' claims necessarily "depend[] on the contents"); *Oddo v. Arcoaire Air Conditioning and Heating*, 2017 WL 372975, *7 fn.3 (C.D.Cal. 2017) ("As plaintiffs refer extensively to the warranties … and they form the basis of their claims for breach of express warranty, the Court takes judicial notice of the warranties").

Citing a YouTube video, Plaintiff alleges that the Dodge Demon "was advertised online as 'the most powerful muscle car ever with 840 horsepower and 770 pounds-feet of torque from his supercharged 6.2 liter HEMI® Demon V-8 engine.'"  Comp., ¶ 15 (underline in original).  He also cites posts on internet blogs which indicate the Dodge Demon has a "functional Air-Grabber hood scoop" that was intended to be "bold and aggressive" and is the vehicle's "most striking visual cues," and describing how it operates.  *Id.* at ¶ 16, 18.  At least one of these posts notes that the 840 horsepower capability depends on use of "100-octane unleaded fuel," and that "premium 91-octane fuel" will result in only 808 horsepower.  *See id.* at ¶ 16, fn.3.[6]  Another, which is actually a publication put out by "BBC Top Gear" (not FCA US), discloses not only the need for the 100-octane fuel to achieve 840 horsepower, but also the need for installation of the free additional components as well.  *See id.*, ¶ 16 fn.5, ¶ 19 fn.8.[7]

The only other "advertisements" Plaintiff identifies are two press releases issued by FCA US for the 2018 Dodge Challenger SRT Demon.  *Id.* at ¶ 19 fn.9, ¶ 20 fn.10,[8] ¶ 20 fn.11.[9]  Both of these press releases specifically indicate that 100+ unleaded high-octane fuel and additional "performance parts" are needed to "unleash[]" the Demons' full performance attributes and specifically to "unleash the full potential 840 horsepower."  *Id.*

**E.      The Claims Pleaded, Proposed Classes, And Relief Sought.**

Plaintiff pleads ten separate legal theories:

- violation of California's False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.* ("FAL") (Count I);

---

[6]*Citing* blog.fcanorthamerica.com/2017/06/08/creating-the-dodge-challenger-srt-demon-v-8.

[7]*Citing* topgear.com/car-news/big-reads/it-mad-bad-840bhp-dodge-demon.

[8]*Citing* media.fcanorthamerica.com/newsrelease.do?id=18304&mid=200.

[9]*Citing* media.fcanorthamerica.com/newsrelease.do?id=18679&mid=.

5

**FCA US LLC'S NOTICE OF MOTION AND RULE 12(b)(6) MOTION TO DISMISS CLASS ACTION COMPLAINT
AND TO DISMISS/STRIKE CLASS ALLEGATIONS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

- violation of express and implied warranties under the Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1790, *et seq.* ("Song-Beverly Act") (Counts II, III);

- "violation of manufacturer's duties under the Song-Beverly Act (Count IV);

- violation of the California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.* ("CLRA") (Count V);

- violation of the California Unfair Competition Law, Cal. Bus. and Prof. Code § 17200, *et seq.* ("UCL") (Count VI);

- breach of express warranty (Count VII);

- fraudulent concealment (Count VIII);

- negligent misrepresentation (Count IX); and

- unjust enrichment (Count X).

*See* Comp., ¶¶ 38-111.

Subject to certain exclusions for those who are members of the judiciary or connected to FCA US, Plaintiff brings these claims on behalf of a class defined as:

"All persons in California who, during the applicable Class Period, purchased or leased a Dodge Demon in California."

*Id.* at ¶ 34.

Plaintiff claims he was damaged by a) buying a vehicle he would not have purchased or would have paid less for, b) receiving a vehicle that does not have the functionality or features promised, c) his vehicle having a diminished value, and d) increased maintenance and repair costs. *Id.* at ¶¶ 43, 51, 60, 78, 88, 94, 99, 105. For relief, he seeks a declaration that FCA US has violated "the claims" pleaded, an injunction and other equitable relief "as is necessary to protect [his] interests" including an order prohibiting FCA US "from engaging in the unlawful acts described above," "disgorgement of all profits and unjust enrichment,"

6

FCA US LLC'S NOTICE OF MOTION AND RULE 12(b)(6) MOTION TO DISMISS CLASS ACTION COMPLAINT
AND TO DISMISS/STRIKE CLASS ALLEGATIONS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

compensatory damages, exemplary damages, pre- and post-judgment interest, and attorneys' fees. *Id.* at pp. 24-25 (Prayer for Relief).

### III. <u>ARGUMENT</u>

### A.   <u>The Governing Legal Standard.</u>

The applicable legal standards are well established.  To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  More than "labels and conclusions are necessary" and "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted).

### B.   <u>The Fraud-Based Claims Must Be Dismissed For Failure To Comply With Rule 9(b) (Counts I, V, VI, VIII, IX, X).</u>[10]

All of Plaintiff's fraud-based claims – *i.e.*, his FAL, CLRA, UCL, fraudulent concealment, negligent misrepresentation, and unjust enrichment claims – are legally insufficient because they do not satisfy the stringent pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure.  *See, e.g., Puri v. Khalsa*, 674 Fed.Appx. 679, 690 (9th Cir. 2017) ("Because the unjust enrichment claim is based on fraud, it too is subject to Rule 9(b)"); *Kelley v. Rambus, Inc.*, 384 Fed.Appx. 570, 573 (9th Cir. 2010) (affirming dismissal of negligent misrepresentation claim that "fail[ed] to meet the heightened pleading standards of Rule 9(b)"); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003) (holding any claim

---

[10] "Because the standard for deceptive practices under the 'fraudulent' prong of the UCL applies equally to misrepresentation-based claims under the CLRA, courts often address these claims in tandem." *Gray v. Toyota Motor Sales, USA*, 2012 WL 313703, *3 (C.D.Cal. 2012).  Thus, Plaintiff's fraud-based UCL claims are addressed here, and his claims under the "unfair" and "unlawful" prongs of the UCL are addressed *infra*, at Sec. III(C).

7

**FCA US LLC'S NOTICE OF MOTION AND RULE 12(b)(6) MOTION TO DISMISS CLASS ACTION COMPLAINT AND TO DISMISS/STRIKE CLASS ALLEGATIONS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

"grounded in fraud" or which "sound[s] in fraud" "must satisfy the particularity requirement of Rule 9(b)").

To satisfy Rule 9(b) Plaintiff was required to "state with particularity the circumstances constituting fraud or mistake." Fed.R.Civ.P. 9(b); *see also Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009).  He has completely failed to meet this standard.

***Affirmative Representations:***  For affirmative misrepresentations, Rule 9(b) mandates that a plaintiff plead "the who, what, when, where, and how of the misconduct charged" and he must "set forth more than the neutral facts necessary to identify the transaction" and include "what is false or misleading about a statement, and why it is false." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citations omitted); *see also Westgate v. Coloplast Corp.*, 2018 WL 6380746, *2 (C.D.Cal. 2018) (finding absence of allegations as to "***when*** and ***where*** Plaintiff and her physician saw these misrepresentations, and what precise representations they saw or read" rendered pleading inadequate under Rule 9(b) (emphasis in original)).

In this District, where a "case involve[es] alleged misrepresentations made through an advertising campaign," the plaintiff must "plead with particularity, and separately, when and how each named plaintiff was exposed to the advertising campaign," and "[i]t is not sufficient to plead as a group, nor is it sufficient simply to allege general exposure without more detail." *In re NJOY, Inc. Consumer Class Action Litig*., 2014 WL 12586074, *10 (C.D.Cal. 2014) (citations omitted); *see also Banh v. Am. Honda Motor Co., Inc.*, 2019 WL 8683361, *5 (C.D.Cal. 2019) (noting a plaintiff "cannot simply reference a statement on a website without providing the date when the statement was made or at what point (if ever) [he] was exposed to that statement" (parenthetical in original; citation omitted)).

Plaintiff simply fails to meet the required pleading standard.  As an initial matter, Plaintiff does not plead that he actually saw or heard any of the

advertisements he identifies in the Complaint.  *See*, *generally*, Comp.  Instead, he proffers only a generic allegation that he "viewed countless advertisements" without any description of what these advertisements were, when he saw them, and where.  Comp., ¶ 26.  The lack of such details renders the affirmative misrepresentation claims legally insufficient.  *See, e.g., Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009) (affirming dismissal for failure to comply with Rule 9(b) where plaintiff failed to "specify when he was exposed to [television advertisements or sales material] or which ones he found material"); *Gertz v. Toyota Motor Corp.*, 2011 WL 13142144, **4, 8 (C.D.Cal. 2011) (dismissing CLRA and UCL claims for failure to comply with Rule 9(b) where plaintiffs "fail[ed] to allege that they actually saw the particular advertisements" pleaded in the operative complaint).

Furthermore, Plaintiff pleads no facts whatsoever as to how any alleged misrepresentation was false as required by Rule 9(b).  *See, e.g., Bunce v. Ocwen Loan Servicing, LLC*, 2013 WL 3773950, *7 (E.D.Cal. 2013) (finding failure to comply with Rule 9(b) where plaintiff did not allege facts showing "how" misrepresentation "was false" (citing *Vess*, 317 F.3d at 1106)).  In fact, any notion of falsity is contradicted by the two media campaigns that Plaintiff cites and relies on in the Complaint.  The crux of Plaintiff's affirmative fraud claim seems to be that he was told his vehicle has 840 horsepower and a functional hood scoop.  *See*, *generally*, Comp.  But, Plaintiff admits that his vehicle is fully capable of operating at 840 horsepower with the right components and fuel, and the media statements he points to expressly advise of the need for these "extras" to achieve the noted horsepower.  *See* § II.D, *supra*.  Furthermore, there is nothing in the Complaint supporting the notion that the hood scoop on Plaintiff's vehicle is not functional.

Since Plaintiff has completely failed to comply with Rule 9(b) in pleading his affirmative misrepresentation claims, Counts I, V, VI, and IX must be dismissed in their entirety, and Counts VIII and X must be dismissed to the extent

they are predicated on affirmative statements.

***Omission-Based Claims:***  Plaintiff has also failed to comply with Rule 9(b) for any omission-based fraud claims.  As a starting point, Plaintiff is ***not*** basing his FAL, CLRA, or UCL claims on any alleged omission, as he pleads only alleged affirmative misrepresentations in those claims.  *See* Comp., ¶¶ 38-45, 71-79, 80-88.  And, of course, "negligent misrepresentation requires a positive assertion to show a misrepresentation of material fact; an omission or an implied assertion will not suffice."  *UMG Recordings, Inc. v. Glob. Eagle Entm't, Inc.*, 117 F.Supp.3d 1092, 1111 (C.D.Cal. 2015).  Thus, the only fraud-claims that could possibly be saved based on alleged omissions are the fraudulent concealment claim in Count VIII and the unjust enrichment claim in Count X.

For the omission based fraudulent concealment and unjust enrichment claims to be viable, Rule 9(b) mandates that the allegations in the Complaint be sufficient to "describe the content of the omission and where the omitted information should or could have been revealed, as well as provide representative samples of advertisements, offers, or other representations ***that plaintiff relied on*** to make her purchase and that failed to include the allegedly omitted information."  *Shamamyan v. FCA US LLC*, 2020 WL 3643481, *7 (C.D.Cal. 2020) (citation omitted; emphasis added).[11]  But, here, Plaintiff pleads no facts about the content of any purported omission, he has not identified any specific representation that he personally saw and relied on, and he does not even attempt to describe where such information could have been revealed so that he would have seen it absent its omission.  *See*, *generally*, Comp.  These pleading failures require dismissal.

---

[11]*See also In re Ford Motor Co. DPS6 Powershift Transmission Prod. Liab. Lit.*, 2019 WL 3000646, *7 (C.D.Cal. 2019) ("To plead the existence of an omission sufficient to support a fraudulent concealment claim, a plaintiff must describe the content of the omission and where the omitted information should or could have been revealed" (citations and quotation marks omitted)).

The omission-based fraudulent concealment and unjust enrichment claims are also subject to dismissal for the separate reason that Plaintiff's own allegations negate them.  Plaintiff complains that he did not know until after his purchase that extra components and specific fuel was required to operate his vehicle at 840 horsepower.  Comp., ¶ 27.  But, the exact "advertisements" he cites as the basis for his fraud claims – including FCA US's media releases – contained this very information.  *See* § II.D, *supra.*  And, to the extent these advertisements contradict Plaintiff's bald allegations of a failure to disclose this information they control because Plaintiff cites them and relies on them in his Complaint.  *See, e.g., Cooper v. Simpson Strong-Tie Co., Inc.*, 460 F.Supp.3d 894, 908 (N.D.Cal. 2020) (finding allegations were not plausible where "application guide" referenced and relied on by plaintiffs in complaint "eviscerate[d] their allegations"); *Chong v. Nestle Waters N. Am., Inc.*, 2020 WL 7690175, *1 (C.D.Cal. 2020) (considering product labels and webpage cited and relied on in complaint at motion to dismiss stage).

Another separate, independent reason to dismiss Plaintiff's omission-based fraudulent concealment and unjust enrichment claims is his failure to allege facts supporting a duty to disclose.  It is axiomatic that "[t]o maintain a cause of action for fraud through nondisclosure or concealment of facts, there must be allegations demonstrating that the defendant was under a legal duty to disclose those facts." *Castel S.A. v. Wilson*, 2000 WL 4003024, *10 (C.D.Cal. 2020) (citation omitted); *see also McCoy v. Nestle USA, Inc.*, 730 Fed.Appx 462, 463 (9th Cir. 2018).  And, this duty exists only in four circumstances:  "(1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material facts." *Castel*, 2000 WL 4003024 at *10.

11

**FCA US LLC'S NOTICE OF MOTION AND RULE 12(b)(6) MOTION TO DISMISS CLASS ACTION COMPLAINT
AND TO DISMISS/STRIKE CLASS ALLEGATIONS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

Here, Plaintiff expressly pleads that a duty to disclose existed based on "false and misleading representations" and he mentions in passing "active conceal[ment]." Comp., ¶¶97-98. But, he pleads no ***facts*** to support these theories. The Complaint contains no actionable representations. *See supra.* And, there is no allegation that FCA US engaged in any act of commission in an effort to suppress information from the public or to obscure Plaintiff's ability to discover information, as is necessary to plead active concealment. *See, e.g., Herrera v. Volkswagen Grp. of Am., Inc.*, 2016 WL 10000085, *4 (C.D.Cal. 2016) (finding plaintiff did not adequately plead a duty to disclose based on active concealment because there was no "factual basis on which the Court can infer ***active***, intentional actions on the part of Defendant" (emphasis in original)). Even giving Plaintiff the benefit of every doubt, what he proffers are conclusory allegations of a concealment. But, simply alleging information was not disclosed does not create (or support) a legal duty to disclose it. *See, e.g., Taragan v. Nissan N. Am., Inc.*, 2013 WL 3157918, *7 (N.D.Cal. 2013); *Gray v. Toyota Motor Sales, U.S.A.*, 2012 WL 313703, *10 (C.D.Cal. 2012).

Plaintiff has completely failed to comply with Rule 9(b) in pleading his omission-based fraudulent concealment and unjust enrichment claims. Thus, Counts VIII and X (the only fraud claims based on omissions) must be dismissed.

## C.  The Lack Of Facts Supporting The "Unlawful" And "Unfair" UCL Claims (Count VI).

Plaintiff's UCL claim in Count VI based on alleged "unlawful" practices fails because he expressly bases it on his FAL and CLRA claims (Comp., ¶ 86), and these underlying claims are subject to dismissal due to multiple legal insufficiencies. *See supra.*; *see also Milman v. FCA US LLC*, 2018 WL 5867481, *14 (C.D.Cal. 2018) (where an "unlawful" UCL claim is premised on other pleaded claims that fail, the UCL claim fails too). And, Plaintiff's "unfair" UCL claim is based entirely on conclusory allegations that he was led "to falsely

believe" his vehicle had certain horsepower and performance features, and that the harm of this outweighs any justification. *See* Comp., ¶¶ 84-85. Such conclusory allegations are insufficient to support a claim of "unfair" conduct. *See, e.g., Milman*, 2018 WL 5867481 at *14; *Lingad v. Indymac Fed. Bank*, 682 F.Supp.2d 1142, 1155 (E.D.Cal. 2010). Rather, "unfair" claims must be based on ***facts*** which satisfy the "public policy test" or the test requiring the utility of the defendant's conduct be weighed against the gravity of his harm. *Milman*, 2018 WL 5867481 at *14. Plaintiff has failed to proffer any allegations that come close to meeting either of these tests.

Plaintiff's "unlawful" and "unfair" UCL claims are legally deficient, and thus Count VI should be dismissed.

## D. The Economic Loss Rule Bars The Fraudulent Concealment Claim (Count VIII) And The Negligent Misrepresentation Claim (Count IX).

This District, as well as others, have concluded that the economic loss rule bars fraudulent concealment claims based on product defects when the alleged defect results only in purported inadequate value or repair/replacement costs. *See In re Ford Motor Co. DPS6 Powershift Transmission Prod. Liab. Litig.*, 2020 WL 5267567, **6-7 (C.D.Cal. 2020); *see also Stewart v. Electrolux Home Prod., Inc.*, 304 F.Supp.3d 894, 902-05 (E.D.Cal. 2018) *Sloan v. Gen. Motors LLC*, 2020 WL 1955643, **23-24 (N.D.Cal. 2020).

The bar of the economic loss rule applies to negligent misrepresentation claims as well. *See, e.g., Hernandez v. FCA US LLC*, 2020 WL 4732061, *4 (S.D.Cal. 2020); *Linde, LLC v. Valley Protein, LLC*, 2019 WL 3035551, **16-18 (E.D.Cal. 2019); *Resnick v. Hyundai Motor Am., Inc.*, 2017 WL 1531192, **10-11 (C.D.Cal. 2017).

Here, Plaintiff's purported damages are purely economic. He alleges no facts supporting damages resulting from personal injury or damage to some product other than his allegedly defective vehicle. Thus, the fraudulent concealment claim

13

in Count VIII and the negligent misrepresentation claim in Count IX are barred and must be dismissed.

**E.      No False Statement To Support The Negligent Misrepresentation Claim (Count IX).**

In addition to failing to comply with Rule 9(b) and being barred by the economic loss rule, Plaintiff's negligent misrepresentation claim in Count IX must be dismissed because the allegations do not support the notion that there was an actual affirmative *mis*representation.  The only reference to a specific affirmative statement in the Complaint is that that the Challenger Demon was advertised as having an engine with 840 horsepower and a functional hood scoop.  *See*, *generally*, Comp.  But, Plaintiff nowhere alleges that this was actually a *mis*representation.  *Id.*  In fact, he admits that his vehicle was equipped with an engine that had 840 horsepower; his only complaint is that he has to use additional components and specific fuel to have it operate at that horsepower.  Comp., ¶ 27.  And, Plaintiff fails to allege that the hood scoop component on his vehicle suffers from anything other than a cosmetic issue.  *See*, *generally*, Comp.  In other words, he has not pleaded the hood scoop is ***non***-functional.  As this District has noted, there must be a false statement for a negligent misrepresentation claim to be viable.  *See Hodgson v. Roper*, 2020 WL 5039405, *9 (E.D.Cal. 2020).  Since Plaintiff has alleged no false statement at all, the negligent misrepresentation claim in Count IX should be dismissed.

**F.      The Express Warranty Claims Are Legally Insufficient (Counts II, VII).**

Plaintiff admits that his vehicle was covered by FCA US's Basic Limited Warranty.  *See* Comp., ¶¶ 48.  And, that warranty expressly provides that it is the only express warranty that FCA US provides for the vehicle.  *See* RJN at Exhibit A, p 4.  Such limitations are legally enforceable.  *See* Cal. Com. Code § 2316; *see also Colgate v. JUUL Labs, Inc.*, 402 F.Supp.3d 728, 756 (N.D.Cal. 2019) ("I agree with JUUL that its limited warranty, which expressly disclaims any other

14

express warranty, precludes plaintiffs' express warranty claim based on JUUL's nicotine formulation").  Accordingly, Plaintiff must plead facts supporting a breach of the Basic Limited Warranty for his express warranty claims in Counts II and VII to survive.  He has simply failed to do so.

As Plaintiff admits, the Basic Limited Warranty promised only to pay for repairs during the warranty period if an item on a vehicle "is defective in material, workmanship or factory preparation."  Comp., ¶ 48.  And, the law is unanimous that this type of express warranty does **not** cover defects in design.  *See, e.g., Troup v. Toyota Motor Corp*., 545 Fed.Appx. 668, 668-69 (9th Cir. 2013) ("In California, express warranties covering defects in materials and workmanship exclude defects in design"); *Espineli v. Toyota Motor Sales U.S.A., Inc.*, 2018 WL 3769383, *2 (E.D.Cal. 2018) (same).

This case – pleaded as a class action on behalf of everyone who purchased the same model, make, and model-year of vehicle and based on allegations of FCA US having known about the alleged defect due to its pre-production review of vehicle components[12] – is clearly about a design defect.  Indeed, this District has repeatedly recognized that when, as here, a plaintiff contends that class treatment is appropriate because all vehicles of a certain make and model have the same defect the case is necessarily about a ***design*** defect.  *See, e.g., Loo v. Toyota Motor Sales, USA, Inc.*, 2019 WL 7753448, *7 (C.D.Cal. 2019) (finding class claims were premised on a design defect despite "offhand references to manufacturing defects" in complaint because class was defined to include "all purchasers or lessees of any 2018 or 2019 Toyota Camry vehicle," and there were allegations of knowledge based on pre-production testing); *Sater v. Chrysler Group LLC*, 2015 WL 736273, *4 (C.D.Cal. 2015) (finding allegations that there is a "uniform defect [present] in all vehicles within a model-year" can "support only the notion that the vehicles

_____

[12]*See* Comp., ¶¶ 23, 34.

were "built in the manner [] intended (but the intended manner was faulty), which in turn means [that] this case is about a design defect not a manufacturing one").

Since the only warranty provided by FCA US (the Basic Limited Warranty) does not cover the design defect that Plaintiff complains of, the express warranty claims in Counts II and VII must be dismissed.  *Id.*

Even if the Basic Limited Warranty did apply (which it does not), dismissal would still be required because Plaintiff pleads no facts supporting a breach of that warranty.  Plaintiff admits the Basic Limited Warranty promised only to pay for the cost of repairs.  Comp., ¶ 48.  And, he admits that FCA US made one free repair for the only issue he presented his vehicle for, and that he chose to reject its offer to correct that repair attempt simply because he had a ***subjective*** belief a second repair would not work.  *See* Comp., ¶¶ 29, 32.  This is not a case where a vehicle was repeatedly repaired under warranty followed by a refusal to repair because of the lapse of that warranty.  This is a case where a warrantor has made, and is trying to make, every effort to comply with its warranty obligations and the product owner is simply refusing to allow it to do so.  No law supports the notion that a unilateral decision to reject a proffered free repair after only one repair attempt can support the breach of a warranty which promised nothing other than to pay for repairs.  In fact, the law is to the contrary.  *See, e.g., Acedo v. DMAX, Ltd.*, 2015 WL 12912365, *18 (C.D.Cal. 2015) (dismissing express warranty claim where plaintiff failed to allege manufacturer "refused to service the vehicle or make repairs"); *see also In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prod. Liab. Litig.*, 754 F.Supp.2d 1145, 1179 (C.D.Cal. 2010) (finding plaintiffs who did not seek repairs for alleged issues "may not pursue a claim for breach of express warranty").

Finally, even if the Basic Limited Warranty did not expressly disclaim all other express warranties (which it does), Plaintiff's express warranty claim in Count VII which is based on advertisements and promotional materials would still

16

1  fail due to pleading deficiencies.  The Complaint does ***not*** include allegations

2  outlining "the exact terms of the warranty, plaintiff's reasonable reliance thereon,

3  and a breach of that warranty which proximately cause[d] plaintiff injury," as is

4  required for such a claim to be viable.  *Mercado v. Audi of Am., LLC*, 2019 WL

5  9051000, *11 (C.D.Cal. 2019); *see also Lusson v. Apple, Inc.*, 2016 WL 6091527,

6  *2 (N.D.Cal. 2016) (dismissing express warranty claim based on statements on

7  websites and in pamphlets because the complaint proffered "no timeframe, and no

8  context for the warranties themselves").  Indeed, Plaintiff does not identify the

9  content of a single advertisement/promotion that he actually saw.

10      Plaintiff has wholly failed to proffer the allegations necessary to support any

11  express warranty claim.  Thus, Counts II and VII should be dismissed.

12  **G.    Implied Warranty Claim (Count III).**

13      There are no allegations in the Complaint that support the notion Plaintiff's

14  vehicle cannot be used safely for transportation.  *See*, *generally*, Comp.  In fact, the

15  allegations support only the notion that Plaintiff has continued to use his vehicle

16  even with its alleged hood scoop cosmetic defect and less-than-promised

17  horsepower, as he pleads that "when he drives the vehicle" he has to put the hood

18  scoop component back in place when his trip ends.  Comp., ¶ 31.

19      What Plaintiff complains about is a cosmetic issue (a component that loses

20  its original form and causes hood paint blemishes) and a lack of promised extreme

21  horsepower.  *Id.*  Neither of these conditions has affected the drivability of

22  Plaintiff's vehicle.  Indeed, he does not even allege that they have.  Without

23  allegations supporting some condition or defect that renders Plaintiff's vehicle

24  unable to provide transportation, his implied warranty claim must be dismissed.

25  *See, e.g., Troup v. Toyota Motor Corp.*, 545 Fed.Appx. 668, 669 (9th Cir. 2013)

26  (affirming dismissal of implied warranty claim where plaintiffs "failed to allege

27  that their Prius was unfit for its intended purpose, as the alleged defect did not

28  compromise the vehicle's safety, render it inoperable, or drastically reduce its

17

mileage range"); *Resnick v. Hyundai Motor Am., Inc.,* 2017 WL 1531192, \*12 (C.D.Cal. 2017) ("implied warranty of merchantability requires something beyond mere aesthetic concerns"); *Avedisian v. Mercedes-Benz USA, LLC*, 43 F.Supp.3d 1071, 1074, 1079 (C.D. Cal. 2014) ("peeling chrome trim on certain interior car components" did not support implied warranty claim because it "did not impact the operability of Plaintiff's vehicle").  Thus, Count III should be dismissed.

### H. The Song-Beverly "Violation of Manufacturer's Duties" Claim Fails (Count IV).

Plaintiff pleads a claim in Count IV that he labels "Violation of Manufacturer's Duties Under the Song-Beverly Consumer Warranty Act."  Comp., ¶¶ 62-70.  This claim is premised on the notion that FCA US has not maintained repair facilities in California that will "***guarantee*** that paint repairs, necessitated by the Air-Grabber Hood Scoop issues, will conform to the factory specifications." *Id.* at ¶ 67 (emphasis added).  This claim is baseless as there is nothing in the Song-Beverly Act that requires a vehicle manufacturer to issue a "guarantee" for, or require its servicing facilities to "guarantee," warranty repairs.  Indeed, the statutory provisions that Plaintiff invokes for this claim do nothing more than 1) set geographical requirements for vehicle manufacturers' to have a "sufficient" number of warranty repair facilities at which their warranty obligations can be fulfilled (Cal. Civil Code § 1793.2(a)), and 2) require manufacturer's to supply its repair facilities with the necessary literature and vehicle parts to meet warranty obligations and "conform" vehicles to those obligations within a "reasonable time" (Cal. Civil Code § 1793.2(b)).  Neither the Song-Beverly Act, nor any warranty that Plaintiff has identified, requires that either a manufacturer or its repair facilities provide any "guarantees" of any nature.

Simply put, Plaintiff's "violation of manufacturer's duties" claim fails because the statutory provisions underlying it do not impose the obligations upon which the claim depends.  Accordingly, Count IV should be dismissed.

1

## I.   <u>Additional Bases For Dismissing Unjust Enrichment Claim (Count X).</u>

In addition to being subject to dismissal for failure to comply with Rule 9(b), Plaintiff's claim for unjust enrichment should be dismissed because it is predicated on the same factual allegations as his other claims and they are all legally deficient. *See supra.*  The legal insufficiency of Plaintiff's other claims stands as proof that his unjust enrichment claim should also be dismissed.  *See, e.g., Girard v. Toyota Motor Sales, U.S.A., Inc.*, 316 Fed.Appx. 561, 563 (9th Cir. 2008); *Cannarella v. Volvo Car USA LLC*, 2016 WL 9450451, *11 (C.D.Cal. 2016).

Plaintiff's unjust enrichment claim is not viable for the separate and independent reason that the pleaded facts show there are adequate legal remedies available to Plaintiff.  *See, e.g., In re Sony PS3 Other OS Litig.*, 551 Fed.Appx. 916, 923 (9th Cir. 2014) ("In light of the adequate legal remedies available, Plaintiffs cannot state a claim for unjust enrichment").  The availability of legal remedies cannot be earnestly disputed when Plaintiff's unjust enrichment claim is based on the exact same alleged wrongdoing as the legal claims he pleads.  *See*, *generally*, Comp.  This, too, warrants dismissal.

Furthermore, as this District has found, "it is well settled" that an unjust enrichment claim "cannot lie where there exists between the parties a valid express contract covering the same subject matter."  *Von Brincken v. Mortgageclose.Com, Inc.*, 2011 WL 2621010, *6 (E.D.Cal. 2011); *see also McKesson HBOC, Inc. v. New York State Common Ret. Fund, Inc.*, 339 F.3d 1087, 1091 (9th Cir. 2003) ("no action for unjust enrichment lies where a contract governs the parties' relationship to each other"); *Sloan v. Gen. Motors LLC*, 2020 WL 1955643, *27 (N.D.Cal. 2020) (collecting cases for proposition that "the mere existence of a contract that defines the parties' rights bars a claim for unjust enrichment").

Plaintiff admits that there is a contract governing his relationship with FCA US with respect to vehicle defects and repairs, *i.e.,* the Basic Limited Warranty.  *See* Comp., ¶ 48.  Thus, for this additional reason, his claim for unjust

19

enrichment should be dismissed.

**J.    Alternatively, The Class Allegations Should Be Dismissed/Stricken.**

"[T]his Court has authority to strike class allegations prior to discovery if the complaint demonstrates that a class action cannot be maintained." *Tietsworth v. Sears*, 720 F.Supp.2d 1123, 1146 (N.D.Cal. 2010) (*citing* Fed.R.Civ.P. 23(c)(1)(A), Fed.R.Civ.P. 23(d)(1)(D); Fed.R.Civ.P. 12(f)); *see also Kamm v. California City Dev. Co.*, 509 F.2d 205, 209 (9th Cir. 1975) (affirming district court order "dismissing the class action aspects of the suit" prior to discovery based on finding superiority was lacking in light of information in public records relating to a separate legal case).

Here, Plaintiff's class allegations are subject to dismissal because they are devoid of facts, legally infirm, and it is evident from the face of the Complaint and other matters which this Court can judicially notice that this case is not suitable for class treatment.  Regurgitating the language setting forth the requirements for certification under all three subsections of Rule 23(b), Plaintiff offers nothing more than conclusory allegations that they are met.  *See* Comp., ¶ 36-37.  This alone is a basis for dismissing his class allegations.  *See, e.g., Sallie Holly v. Alta Newport Hosp., Inc*, 2020 WL 6161457, *5 (C.D.Cal. 2020) ("Class allegations must be supported by sufficient factual allegations demonstrating that the class device is appropriate and discovery on class certification is warranted" (bracketing and citation omitted)); *Flores v. Starwood Hotels & Resorts Worldwide, Inc.*, 2015 WL 12912337, *4 (C.D.Cal. 2015) ("Courts in this district, in reviewing motions to dismiss class action complaints, have applied the *Iqbal/Twombly* standard to class claims (citations omitted)).

Furthermore, Plaintiff's claim that this case meets the requisites for certification set forth in Rule 23(b)(2)[13] is easily dispensed with.  Under that

---

[13]*See* Comp., ¶ 37(3) (averring the class should be certified because "Defendants has [sic] acted or refused to act on grounds generally applicable to

provision, certification is proper when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed.R.Civ.P. 23(b)(2). But, in *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360-61 (2011), the Court expressly held that certification is not proper under Rule 23(b)(2) "when each class member would be entitled to an individualized award of monetary damages." Here, Plaintiff's allegations of having overpaid for a vehicle and of vehicles having diminished value leave no doubt that his theories of recovery allow for an individualized award of monetary damages. Indeed, Plaintiff mentions seeking injunctive relief only in passing, and only in wholly conclusory terms. And, the injunctive relief he claims he seeks—"as is necessary to protect the interests of Plaintiff and the class" including a prohibition on FCA US breaking the law—is so vague and esoteric that it is likely not even legally cognizable. Thus, Plaintiff's allegations that certification is proper under Rule 23(b)(2) must be stricken or dismissed.

Plaintiff's claim that certification is proper under Rule 23(b)(1)[14] is subject to the same fate for essentially the same reason. As this District has recognized, "Rule 23(b)(1) certification is not appropriate in an action primarily for damages." *Brown v. Nat'l Life Ins. Co.*, 2013 WL 12096508, *6 (C.D.Cal. 2013) (*citing Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1194-95 (9th Cir. 2001)). And, here, Plaintiff's claims for non-monetary relief are wholly vague and illusory,

Class members, thereby making appropriate final and injunctive relief with respect to the Class as a whole").

[14] *See* Comp., ¶ 37(1)(2) (averring the class should be certified because "[t]he prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual members of the proposed Class that would establish incompatible standards of conduct for Defendant," and because "[t]he prosecution of separate action [sic] by individual Class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudication or substantially impair or impede their ability to protect their interests").

making clear that this case is really about nothing more than money damages. Accordingly, there is no basis for certification under Rule 23(b)(1).

Finally, Plaintiff's rote allegation that the superiority requisite is satisfied for certification under Rule 23(b)(3)[15] is negated by his own admissions and publicly available records. As an starting point, the Ninth Circuit has expressly recognized that "the very purpose of Rule 23(b)(3) [is] to allow integration of numerous ***small*** individual claims into a single powerful unit." *Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 722 (9th Cir. 2010) (emphasis added; citation omitted). This purpose is encapsulated in Rule 23(b)(3)(A)(B) which dictates that two of the key components to be considered in determining superiority are "the class members' interests in individually controlling the prosecution [ ] of separate actions," and "the extent and nature of any litigation concerning the controversy already begun by [ ] class members." Fed.R.Civ.P. 23(b)(3)(A)(B). This reflects the logic that the larger the potential recovery the more putative class members will want to have control over their own fate and the more likely it will be that they are willing to prosecute their own claims if they have any.

The fact that Rule 23(b)(3) is directed at the adjudication of "***small*** individual claims" is also recognized in its other requisites. For example, in considering whether the practicality of joinder portion of the numerosity requisite is met one factor considered is "putative class members' ability and willingness to bring individual actions." *Twegbe v. Pharmaca Integrative Pharmacy, Inc.*, 2013 WL 3802807, *5 (N.D.Cal. 2013); *see also Culley v. Lincare Inc.*, 2017 WL 3284800, *2 (E.D.Cal. 2, 2017). "The size of the individual claim matters," and numerosity is less likely to be met "where individual recoveries are substantial." *Twegbe*, 2013 WL 3802807 at *5  And, notably, in cases like this where attorneys'

---

[15]*See* Comp., ¶ 36(e).

fees are available, potential recoveries as low as $38,000 have been found to "provide real incentives to institute individual actions." *Id.*

Plaintiff's claims, and those of the members of the putative class, are ***not small*** individual claims.  Indeed, Plaintiff avers they all have a right revoke their vehicles purchases.  *See* Comp., ¶¶ 51, 61.  And, according to Plaintiff, his own revocation claim is worth $166,000, and those of the class are worth at least $85,000 with "many" exceeding $150,000.  *Id.* at ¶¶ 19, 26.  That each individual class member has a significant interest in controlling their own claims and an incentive to do so is self-evident from these numbers.  This makes clear that superiority is lacking.  And, the fact that at least one other class member is pursuing his own individual claims further supports to this fact.  *See Garlough v. FCA US LLC*, Case No. 2:20-cv-01879 (E.D.Cal), ECF #17.  Thus, certification under Rule 23(b)(3) would be improper.

Plaintiff's class allegations are legally and factually infirm.  They should be dismissed or stricken.

## IV.  CONCLUSION

For the reasons stated herein, Defendant FCA US LLC respectfully requests that this Court dismiss Plaintiff's Class Action Complaint, or, alternatively, that it dismiss or strike the class allegations.

Dated:  January 8, 2021

**NELSON MULLINS RILEY & SCARBOROUGH LLP**

By: */s/ Ryan E. Cosgrove*
Ryan E. Cosgrove

**THOMPSON COBURN LLP**
Stephen A. D'Aunoy (*pro hac vice*)
Thomas L. Azar, Jr. (*pro hac vice*)

*Attorneys for Defendant FCA US LLC*